THE STATE OF OHIO, APPELLEE, *v.* BANKS, APPELLANT.

(No. 85AP-391 — Decided
April 22, 1986.)

*Michael Miller,* prosecuting attorney, and *Karen L. Martin,* for appellee.
*James Kura,* county public defender, and *Barbara J. Slutsky,* for appellant.

*Per Curiam.* Defendant-appellant appeals a decision of the Court of Common Pleas of Franklin County of guilty of murder with a firearm specification. Defendant was sentenced to a term of fifteen years to life, with an additional three years of actual incarceration for the firearm specification.

A jury trial adduced the following facts. Several police officers and a medic testified that they arrived at defendant's home and found defendant's wife lying on the floor, apparently shot; that defendant said he had accidentally shot his wife; and that he identified the gun involved.

Detectives testified that defendant changed his version of events several times. The victim's sister testified that defendant had told her, "from what I can see now, Jackie and I can't stay in the same room together. One of us has to go"; and that he told her he could kill the victim and get away with it.

An expert testified that the weapon had been discharged at a distance of four feet or less; that, when in half-cocked position, the gun would not discharge unless the trigger was pulled; and that if the gun fired, it would not fire a second time unless some agent turned the cylinder.

Two of defendant's friends testified that they had been in defendant's home earlier in the evening; that both defendant and his wife were happy and excited at the arrival of their baby in the near future; and that they saw no disagreement between the two.

Defendant testified that the shooting was an accident; that his wife asked him to unload the gun and remove it from the room; that while doing so it accidentally discharged twice; and that he loved his wife and would not have done anything to harm either her or their unborn child.

Defendant asserts the following six assignments of error:

"1. Improper statements made by the prosecuting attorney during questioning of appellant and closing arguments denied appellant a fair trial and due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and, as such, it was error for the trial court to overrule appellant's motion for new trial in this regard.

"2-A. The trial court erred in overruling defense counsel's motion in limine and motion for judgment of acquittal concerning an alleged prior similar act and admitting such testimony into evidence. This denied appellant a fair trial and due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

"2-B. The trial court committed plain error in failing to instruct the jury on similar act testimony. This deprived appellant of a fair trial and due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

"2-C. Defense counsel violates an essential duty of care owed an accused, and therefore, the accused is denied his Sixth Amendment right to effective assistance of counsel, where defense counsel fails to object to prejudicial similar act testimony and fails to request a jury instruction regarding the use of similar act testimony.

"3-A. The trial court erred and abused it's [sic] discretion in overruling defense counsel's objection to the introduction of testimony offered by a witness whose name was not provided on discovery. This deprived appellant of a fair trial and due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

"3-B. The trial court erred and abused it's [sic] discretion in permitting the introduction of prejudicial hearsay testimony over objection of defense counsel and thereby denied appellant a fair trial and due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution.

"3-C. Defense counsel violates an essential duty of care owed an accused and, therefore, the accused is denied his Sixth Amendment right to effective assistance of counsel where defense counsel fails to request a sanction for a violation of discovery and fails to object to a misstatement by the prosecutor on closing argument in the same regard.

"4. The trial court committed prejudicial error in failing to instruct the jury on the lesser included offense of negligent homicide and, as such, it was error for the trial court to overrule appellant's motion for new trial in that regard. This deprived appellant of a fair trial and due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

"5. It is error to find appellant guilty of the firearm specification in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9 and 10 of the Constitution of the State of Ohio.

"6. Appellant's conviction was not supported by sufficient credible evidence and was against the manifest weight of the evidence."

In the first assignment of error, defendant contends that statements made by the prosecutor during the questioning of defendant and also during closing arguments were improper. The statements concerned past incidences of violence against the victim by defendant, the telephone conversation between defendant and the victim's sister and, finally, an allegation that the prosecutor implied to the jury that defense counsel did not believe in his own case, but the prosecutor did believe in hers.

Defendant himself testified that he and the victim had visited the night prosecutor's office after he struck her on two occasions. Regarding the telephone conversation, the record is clear that, while Mills had not previously talked with defendant on the phone, the caller identified himself as defendant. She also testified she knew defendant for eight months and had been at his house. The prosecutor erroneously stated to the effect that Mills had previously talked to defendant on the phone and, thus, could recognize his voice. Mills testified that she had never before talked to defendant on the phone; she was not asked whether she recognized his voice and did not state that she did.

Regarding the supposed allegation by the prosecutor of counsels' belief in their respective cases, a review of the record indicates that this was the substance of the comment. The state contends that the prosecutor's improper comment was properly retaliatory to comments made by defense counsel. One instance referred to was an improper comment of defense counsel following the asking of an improper question by the prosecutor that: "They don't call her mad dog for nothing," to which the prosecutor did not object but, instead, withdrew the question. The state also alludes to questionable comments by defense counsel during closing argument insinuating that the prosecutor

was overzealous. Not only did the prosecutor respond to such insinuation earlier in rebuttal argument, to which no objection was made, but the objected-to comment at the end of rebuttal tends to prove, rather than negate, the insinuation.

At the end of rebuttal, the prosecutor stated:

"I also draw your attention, and then I'll sit down and you can go into the jury room and decide this case, but the defense attorney also stated on opening statement — and I don't have the words exactly correct — but when attorneys argue the cases in trial that they don't necessarily believe in what they argue, and I submit to you, Ladies and Gentlemen, that Mr. Tyack speaks only for himself."

Unfortunately, the trial court overruled defense counsel's immediate objection to this crass attorney misconduct.

Not only is the prosecutor's comment improper and prejudicial, especially in light of its timing, but it is inaccurate as to a comment made by defense counsel during voir dire of the jury, rather than opening statement when he correctly stated:

"MR. TYACK: I talked to you a minute ago about the judge's inadvertent use of the word 'victim.' Another thing that Ms. McClellan has done repeatedly is talk about this as a 'murder case.'

"I think she would be the first to tell you that that is the way she refers to it because that is the charge that you are going to be looking at; but as you will find out shortly, the whole issue in this whole case is, you know, was there a murder or was there a manslaughter or was there a negligent homicide? Those things differ from each other based on what was in Mr. Bank's mind at the time the gun went off.

"Now can each of you, once again, decide the case based on the evidence you hear, not by some of the little slip-

ups those of us in the courtroom may make without thinking that we assume it one way or another?

"It's frankly unethical for either Ms. McClellan or I [*sic*] to express a personal belief about a case. We are supposed to talk to you about what the evidence has shown, what the evidence will show and ask questions of you to determine whether you would be a good juror in this case, but it isn't up to us to stand in front of you and say I believe so and so, and therefore you should believe so and so.

"We're not allowed to do that, so if we do something that implies we are doing that, put it out of your mind. It's part of the ethics we function under as lawyers."

The defense counsel's comment was consistent with the Code of Professional Responsibility, DR 7-106(C), specifically providing with respect to trial conduct as follows:

"(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

"(1) State or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence.

"(2) Ask any question that he has no reasonable basis to believe is relevant to the case and that is intended to degrade a witness or other person.

"(3) Assert his personal knowledge of the facts in issue, except when testifying as a witness.

"(4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein.

"\* \* \*"

The trial of a murder case is not a "game" or a "battle of wits" between counsel. An attorney cannot properly fail to object to questionable or improper comments of opposing counsel so as to utilize them as a justification for an inaccurate and grossly improper comment at the conclusion of closing argument to the jury.

Although we find no reversible error with respect to the misstatement of evidence or other questionable comments by the prosecutor, especially since no objection was made, the concluding comment was so egregious as to require reversal since the trial court erroneously overruled the objection thereto. For this reason and to this extent, the first assignment of error is sustained.

In the second assignment of error, defendant urges that it was error to overrule defendant's motion *in limine* regarding similar act testimony; that the trial court should have instructed the jury regarding similar act testimony; and that failure to request an instruction on similar act testimony resulted in defendant's receiving ineffective assistance of counsel.

It was not error to allow the testimony of prior acts of violence against the victim committed by defendant since they were relevant to the issue of intent or purpose. See Evid. R. 404(B). Defendant admitted that he shot his wife. (Defendant also admitted he had struck his wife on two separate, prior occasions.)

Defendant stated that he loved his wife and that he would never do anything to harm her or his unborn child. In the facts of this case, it was appropriate to challenge that testimony by showing that defendant was capable of violent acts against his wife. Defendant concedes that R.C. 2945.59 allows evidence of any acts which tend to show motive or intent.

Further, the failure to give a special limiting instruction was not plain error, and the failure to request such an instruction did not constitute ineffective

assistance of counsel. See Crim. R. 30 and 52(B). See, also, *State* v. *Long* (1978), 53 Ohio St. 2d 91, 7 O.O. 3d 178, 372 N.E. 2d 804.

Although defendant contends that the other act evidence was too remote in time, being several months prior to the conduct at issue, it was within the trial court's discretion to admit the evidence. Accordingly, defendant's second assignment of error is overruled.

In the third assignment of error, defendant contends that the trial court should not have allowed the testimony of a witness whose name was not provided on discovery; that the witness gave hearsay testimony; and that trial counsel's failure to request a sanction for the alleged violation of discovery constitutes ineffective assistance of counsel.

On March 8, 1985, four days prior to the trial's commencing, defendant filed a motion *in limine* which identified Mills as a witness and indicated that trial counsel was aware of the nature of her testimony at that time.

Although it did not constitute an admission as contended by the state, the witness' testimony concerning what defendant allegedly told her over the telephone was properly admitted under Evid. R. 803(3) as evidence of defendant's state of mind and mental feeling at the time. Although it occurred several months prior to the conduct at issue, it was within the trial court's discretion to admit the evidence as bearing upon the issues of motive and intent. While the foundation of defendant's identity was weak, this went to the weight rather than admissibility of the evidence, there being a permissible inference the witness could recognize defendant's voice, being his sister-in-law. Defendant's third assignment of error is overruled.

In the fourth assignment of error, defendant urges that the trial court was required to instruct the jury on negligent homicide as a lesser included offense and that the evidence and the defense's theory warranted such an instruction.

In *State* v. *Gates* (1981), 2 Ohio App. 3d 485, 486, 2 OBR 611, 613, 442 N.E. 2d 1321, 1323, this court held that:

"An offense may be a lesser included offense of another only if (1) the offense is a crime of lesser degree than the other, (2) the offense of the greater degree cannot be committed without the offense of the lesser degree also being committed, and (3) some element of the greater offense is not required to prove the commission of the lesser offense. *State* v. *Wilkins* (1980), 64 Ohio St. 2d 382, at 384 [18 O.O.3d 528]."

The state contends that the refusal to instruct on negligent homicide was correct because negligent homicide (R.C. 2903.05) contains an element not found in murder (R.C. 2903.02) — that death must be caused by a dangerous weapon or ordnance — citing *State* v. *Hreno* (1954), 162 Ohio St. 193, 55 O.O. 97, 122 N.E. 2d 681. However, *Hreno* goes on to clarify that, "if certain but not all the elements of the offense charged in the indictment constitute in themselves an offense, then such offense is a lesser included offense." *Id.* at 197, 55 O.O. at 99, 122 N.E. 2d at 683. Thus, even *Hreno* rejected the overly technical approach taken by the state.

Under appropriate circumstances, negligent homicide is a lesser included offense of murder. See *State* v. *Fulk* (May 3, 1983), 82AP-577, unreported, at 10. Contra *State* v. *Jenkins* (1983), 13 Ohio App. 3d 122, 13 OBR 141, 468 N.E. 2d 387.

An analysis of whether one offense is a lesser included offense of another must commence with whether a person could be convicted of both offenses at the same trial if charged with both. If conviction of the greater offense would necessarily preclude conviction of the

lesser offense upon the same facts, the two offenses are so related that the lesser offense is included in the greater. The *Jenkins* court predicated its determination solely upon comparison of statutory language and concluded that negligent homicide is not a lesser included offense of murder because, in some murder cases, a charge upon negligent homicide would be precluded by the facts, even though in some cases the facts would present a possible case of negligent homicide rather than murder.

In most cases of negligent homicide, a charge of murder would also be appropriate since the degree of the offense would depend solely upon the culpable mental state of the defendant, that is, whether the killing was purposeful or negligent. Accordingly, we conclude that, whether a lesser included offense is involved depends upon the evidence adduced at trial and cannot be determined solely by comparison of statutory language, which must be consulted to determine whether the lesser offense could be, rather than always is, included within the greater offense. In other words, where it would be possible for the same evidence to prove both a greater offense and a lesser offense depending solely upon the culpable mental state of the accused, the lesser offense is a lesser included offense of the greater offense even though it might be possible in a different case to prove commisson of the greater offense without proving the commission of the lesser. See *State* v. *Loudermill* (1965), 2 Ohio St. 2d 79, 31 O.O. 2d 60, 206 N.E. 2d 198.

Therefore, we must determine whether the trial court was required to give the requested instruction:

"The mere fact that an offense can be a lesser included offense of another offense does not mean that a trial court must instruct on both offenses where the greater offense is charged. If the evidence adduced on behalf of the defense is such that, if accepted by the trier of fact, it would constitute a complete defense to all substantive elements of the crime charged, the trier of fact will not be permitted to consider a lesser included offense unless the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements which, by themselves, would sustain a conviction upon a lesser included offense. The persuasiveness of the evidence regarding the lesser included offense is irrelevant. If under any reasonable view of the evidence it is possible for the trier of fact to find defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given. The evidence must be considered in the light most favorable to defendant. * * *" *State* v. *Gates, supra,* at 487, 2 OBR at 613-614, 442 N.E. 2d at 1323-1324, citing *State* v. *Wilkins, supra.*

In this case, the state sought to prove the elements of murder, *i.e.,* that defendant (1) purposely (2) caused the death of another. Negligent homicide has three elements: (1) negligently (2) causing the death of another (3) by means of a deadly weapon or ordnance. Defendant admitted that the gun was the means of death and this was not an issue in the case. The evidence indicated that only slight pressure on the trigger could cause the gun to discharge.

The jury could have found against the state on the issue of whether the death was caused purposely, but it held for the state on the issue of defendant causing the death of the victim. Accordingly, under the circumstances of this case, where it is uncontroverted that death was caused by a deadly weapon, if the jury concluded that the defendant negligently caused the death, that deter-

mination would sustain a conviction of negligent homicide.

Therefore, the trial court was required to give the jury an instruction on negligent homicide as a lesser included offense of murder, and it was error not to do so. The defendant's fourth assignment of error is sustained.

In the fifth assignment of error, defendant contends that finding him guilty of the firearm specification violated both federal and state constitutional guarantees. This court has consistently rejected that proposition.

R.C. 2929.71 provides sufficient notice that an additional term of years will be involved when a firearm is associated with a felony offense. *State* v. *Jordan* (July 11, 1985), Franklin App. No. 83AP-1168, unreported. Also, the firearm specification does not constitute cruel and unusual punishment. *State* v. *Jones* (1983), 13 Ohio App. 3d 65, 13 OBR 70, 468 N.E. 2d 158. *Solem* v. *Helm* (1983), 463 U.S. 277, cited by defendant, is inapplicable because it involves the proportionality of sentences in felony convictions, and this issue was not raised on appeal. *Jordan, supra.* Accordingly, the fifth assignment of error is overruled.

In the sixth assignment of error, defendant urges that his conviction was not supported by sufficient credible evidence and was against the manifest weight of the evidence. This contention is not well-taken.

An expert testified that the gun would not accidentally fire unless in the cocked or half-cocked position. Defendant admitted the gun was half-cocked. However, the expert testified that, after being fired once, the cylinder would not turn unless some agent manually turned it and placed another bullet in front of the hammer. There is evidence the gun was fired twice.

Also, defendant not only testified that the shooting was accidental, but also that he loved his wife and unborn child and would do nothing to harm them. The state produced evidence which challenged that assertion. The jury observed all the witnesses, was the finder of fact, and was properly instructed on the burden of proof.

There was sufficient, credible evidence on which a jury could find defendant guilty of murder. Defendant's sixth assignment of error is overruled.

Defendant's first and fourth assignments of error are sustained, and the second, third, fifth, and sixth assignments of error are overruled. The judgment of the trial court is reversed, and this cause is remanded to the Court of Common Pleas of Franklin County for a new trial.

*Judgment reversed*
*and cause remanded.*

WHITESIDE and NORRIS, JJ., concur.

STRAUSBAUGH, J., dissents.

STRAUSBAUGH, J., dissenting. I must respectfully dissent from the majority opinion as to the fourth assignment of error. I believe that the trial court correctly determined that negligent homicide was not a lesser included offense based on the facts in this case and, therefore, it was not error to refuse to instruct the jury.

The majority quotes *State* v. *Gates, supra,* at 487, 2 OBR at 613-614, 442 N.E. 2d at 1324, wherein the court stated: "[i]f under any reasonable view of the evidence it is possible for the trier of fact to find defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given * * *." It is thus apparent that the determination of whether an instruction on a lesser included offense should be given must necessarily focus on the evidence presented at trial.

In the instant case, it was clearly established that the victim was shot twice. The prosecution's expert witness, R. C. Fischer, testified that the weapon could discharge if it was in a half-cocked position and was bumped or dropped. The expert further testified that prior to discharging a second time, the weapon had to be either manually cocked or the cylinder had to be manually rotated in a clockwise direction. Without this manual rotation, the second bullet could not have been in front of the firing pin. In my opinion, based on this evidence, no one under the facts of this case could *reasonably* find against the state and for the defendant with respect to the element of "purposely." Only by a strained, unreasonable finding would it be possible for the trier of fact to find defendant not guilty of the greater offense and guilty of the lesser offense.

Accordingly, I would overrule defendant's fourth assignment of error, and affirm the judgment of the trial court.