The STATE of Ohio, Appellee,

v.

TANNER, Appellant.

[Cite as *State v. Tanner* (1993), 90 Ohio App.3d 761.]

Court of Appeals of Ohio,
Franklin County.

No. 93AP–01.

Decided Sept. 30, 1993.

*Michael Miller,* Franklin County Prosecuting Attorney, and *Joyce S. Anderson,* Assistant Prosecuting Attorney, for appellee.

*Dennis C. Belli,* for appellant.

PETREE, Judge.

Defendant, James Tanner, Jr., appeals from a judgment of the Franklin County Court of Common Pleas, alleging the following as error:

1. "The common pleas court erred in denying defendant-appellant's motion to dismiss Count Two of the indictment, aggravated murder, on double jeopardy and collateral estoppel grounds."

2. "The common pleas court disregarded the law of the case and this court's mandate in *Tanner I,* and committed reversible error in accepting and entering as a matter of record the jury's inconsistent verdicts finding defendant-appellant guilty of aggravated murder and involuntary manslaughter in respect to the same homicide victim, and further in sentencing defendant-appellant upon the greater offense, aggravated murder."

3. "The common pleas court erred in instructing the jurors that they should consider the charges contained in Count One of the indictment, involuntary manslaughter, and Count Two, aggravated murder, independently, and in refusing to instruct the jurors that the two homicide charges should be considered in

the alternative and that defendant-appellant may be found guilty of one or the other, but not both."

4. "The common pleas court's denial of defendant-appellant's motion for an order rejecting the jury's guilty verdict on Count Two of the indictment, aggravated murder, and accepting the jury's guilty verdict on Count One, involuntary manslaughter only; or in the alternative, for an order directing the jury to deliberate further with special instructions constitutes reversible error."

5. "Defendant-appellant's convictions for involuntary manslaughter and aggravated murder are not supported by sufficient evidence of the *corpus delicti* where the coroner's opinion as to the cause of death by criminal means was based upon the fact that the victim was alive before he was stabbed and had died sometime after he was stabbed, the stab wounds themselves being ordinarily non-fatal."

6. "The common pleas court erred in excluding defense testimony dealing with the co-defendant's statement of then-existing violent intent just prior to the homicide, with defendant-appellant's exculpatory pre-arrest statements that contradicted or explained his inculpatory pre-arrest statements adduced by the state, and with the economic feasibility of performing DNA testing which contradicted the state's evidence that DNA testing was too expensive to perform."

Defendant was indicted by the Franklin County Grand Jury on two counts of aggravated murder and two counts of aggravated robbery. Defendant waived his right to a jury trial and was tried on the charges by a three-judge panel. The panel found defendant guilty of the lesser-included offense of involuntary manslaughter on Count 1, guilty of aggravated murder on Count 2, guilty of aggravated robbery on Count 3, and no disposition was made on Count 4. The court "merged" Count 1 and Count 2 and sentenced defendant to life imprisonment without parole eligibility for thirty years. A fifteen- to twenty-five-year sentence was imposed on Count 3. Defendant appealed the panel's decision. This court overturned the trial court's decision and remanded the matter for a new trial.

On remand, the matter was tried to a jury on November 17, 1992. On November 24, 1992, the jury reached its verdict, finding defendant guilty of involuntary manslaughter, aggravated murder and specifications, and aggravated robbery with specifications. Defendant moved the court to reject the verdict of guilty of aggravated murder due to inconsistency or, in the alternative, to direct the jury to deliberate further and to return a single verdict on the involuntary manslaughter count or the aggravated murder count, but not both. Defendant's motion was denied. The jury was discharged and, on December 7, 1992, defendant was sentenced for his crimes. Defendant filed a timely appeal and the matter is now before this court.

Defendant alleges that the trial court erred in failing to dismiss Count 2 of the indictment, aggravated murder, on grounds of double jeopardy and collateral estoppel.

The Double Jeopardy Clause of the United States Constitution protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction and multiple prosecution for the same offense. *North Carolina v. Pearce* (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. The Ohio Constitution protects against double jeopardy in Section 10, Article I, which reads: "No person shall be twice put in jeopardy for the same offense." The protection afforded by the two Constitutions is substantially similar and a prosecution which satisfies the United States Constitution will not violate the Ohio Constitution. See *State v. Thomas* (1980), 61 Ohio St.2d 254, 15 O.O.3d 262, 400 N.E.2d 897, and *State v. Heisler* (Apr. 21, 1989), Portage App. No. 1943, unreported, 1989 WL 38937. The court will therefore limit its analysis of defendant's first assignment of error in terms of federal constitutional law.

The Double Jeopardy Clause generally does not prevent retrial in cases where a conviction is overturned on appeal. See *Lockhart v. Nelson* (1988), 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265; *Montana v. Hall* (1987), 481 U.S. 400, 107 S.Ct. 1825, 95 L.Ed.2d 354; *Burks v. United States* (1978), 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1, 9–10; *United States v. Tateo* (1964), 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448; *United States v. Ball* (1896), 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300. "Allowing retrial to correct trial error is necessary to ensure the sound administration of justice." *Parker v. Lockhart* (E.D.Ark.1992), 797 F.Supp. 718.

The exception to the general rule is found in *Burks v. United States, supra,* which holds the Double Jeopardy Clause bars retrial when the reviewing court finds the evidence presented at trial insufficient to sustain the jury's verdict. *Id.,* 437 U.S. at 18, 98 S.Ct. at 2150–2151, 57 L.Ed.2d at 14. This court in its prior decision specifically noted that the evidence presented in this case "could be sufficient to convict appellant of either involuntary manslaughter or aggravated murder depending on the weight given to that evidence." *State v. Tanner* (Dec. 31, 1991), Franklin App. No. 91AP–263, unreported, 1991 WL 281410 (hereinafter *"Tanner I "*). The record contains sufficient evidence to support a finding of guilt on the indictment. Therefore, *Burks* is inapplicable in this matter. Defendant's retrial was not barred by double jeopardy under the Ohio or United States Constitutions. The trial court did not err in refusing to dismiss Count 2 of the indictment on double jeopardy grounds.

Defendant argues that his retrial on the aggravated murder charge is barred on the principle of collateral estoppel. Collateral estoppel means "simply

that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson* (1970), 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475. Collateral estoppel is an established rule of the federal criminal law and is embodied in the Fifth Amendment guarantee against double jeopardy.

Defendant contends that the ultimate issue of whether he intended to kill Billy McBride was determined in his favor upon his conviction for involuntary manslaughter at the close of his first trial. Defendant fails to note he was also convicted of aggravated murder, which requires an express finding of intent. This court overturned both of these convictions and remanded the matter to the trial court for a new trial. It is obvious that the issue of defendant's intent at the time of the murder has not been "determined by a valid and final judgment." Collateral estoppel is not a bar to defendant's retrial and the trial court did not err in refusing to grant defendant's motion to dismiss.

Based on the foregoing, defendant's first assignment of error is without merit and, therefore, overruled.

■ Defendant's second, third and fourth assignments of error revolve around the trial court's application of the law set out by this court in *Tanner I.* Defendant argues the trial court refused to follow the "law of the case" and, therefore, this matter must once again be remanded for a new trial.

■ The doctrine of "law of the case" provides "that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3, 11 OBR 1, 2–3, 462 N.E.2d 410, 412. The doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results. *Id.* Where a court of appeals errs in the first review of a case, it is not precluded in the furtherance of substantial justice between the parties to make a proper determination of the rights of the parties on a second review. See *Holt v. Margulis* (Mar. 16, 1971), Franklin App. No. 9812, unreported. In the present case, after extensive review and debate concerning our prior decision, this court finds *Tanner I* in need of clarification.

*Tanner I* stands for the proposition that the offenses of involuntary manslaughter and aggravated murder are logically and rationally inconsistent, and if a defendant is found guilty of both offenses, on a single indictment, arising from the same killing, a new trial is required. This court's analysis in *Tanner I* is predicated on the assumption that an element of the offense of involuntary manslaughter is "lack of intent" or "lack of purpose to kill." If this were true,

involuntary manslaughter and aggravated murder would be inconsistent to such a degree as to require a new trial. However, this court's decision in *Tanner I* is predicated on an erroneous assumption, for "lack of intent" is not an element of involuntary manslaughter.

Involuntary manslaughter is defined in R.C. 2903.04, which reads:

"(A) No person shall cause the death of another as a proximate result of the offender committing or attempting to commit a felony."

█ Proof of intent or lack thereof is not required to obtain a conviction under the statute. A conviction pursuant to R.C. 2903.04 establishes that a defendant caused the death of another as a proximate result of the defendant committing or attempting to commit a felony—here, aggravated robbery. It does not establish that a defendant lacked the intent to kill his victim. The finder of fact need not make a finding concerning intent to convict on involuntary manslaughter. The issue of intent is left unresolved by such a conviction.

Of course, if intent or "purpose to kill" is proven beyond a reasonable doubt, a defendant may be convicted of murder. Absent such proof, the defendant may be convicted of the lesser-included offense of involuntary manslaughter. This occurrence led the court in *Tanner I* to come to the conclusion that involuntary manslaughter constitutes a determination that defendant lacked the intent to kill. This conclusion overlooks the difference between lack of proof and proof of intent. Failure to prove intent does not equate to lack of intent. It merely indicates that the trier of fact did not find the prosecution carried its burden of proof. A review of the offenses utilizing a lesser-included offense analysis helps clarify the consistency between the two offenses.

Involuntary manslaughter is a lesser-included offense of murder. *State v. Rohdes* (1986), 23 Ohio St.3d 225, 23 OBR 382, 492 N.E.2d 430; *State v. Kidder* (1987), 32 Ohio St.3d 279, 513 N.E.2d 311. An offense is a lesser-included offense of another only if:

" * * * (i) the offense is a crime of lesser degree than the other, (ii) the offense of the greater degree cannot, as statutorily defined, ever be committed without the offense of the lesser degree, as statutorily defined, also being committed, and (iii) some element of the greater offense is not required to prove the commission of the lesser offense. * * * " *Kidder*, at paragraph one of the syllabus.

As noted in *Kidder*, 32 Ohio St.3d at 281, 513 N.E.2d at 314–315, "*all* the elements of the lesser offense must be present in the greater offense, with others, such that it would be impossible to commit the greater offense without also having committed the lesser." (Emphasis *sic*.)

Involuntary manslaughter is a lesser-included offense of aggravated murder. Aggravated murder, R.C. 2903.01, is defined in part, as follows:

"(A) No person shall purposely, and with prior calculation and design, cause the death of another.

"(B) No person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * aggravated robbery * * *."

Pursuant to R.C. 2903.01(D):

"No person shall be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another. * * *"

Obviously, all of the elements of involuntary manslaughter exist within the crime of aggravated murder. It would be impossible to commit aggravated murder without committing involuntary manslaughter. This would not be true if a guilty verdict on involuntary manslaughter resulted in the determination that a defendant was without intent to kill his victim. Once an affirmative finding of lack of intent was made, an individual could never be convicted of aggravated murder. The offense of the greater degree (aggravated murder) could not be committed if the offense of the lesser degree (involuntary manslaughter) was committed. Involuntary manslaughter could never be a lesser-included offense of aggravated murder. Clearly, the Supreme Court has held involuntary manslaughter to be a lesser-included offense of murder (see *Rohdes* and *Kidder, supra*) and, therefore, it is axiomatic that "lack of intent" is not an element of involuntary manslaughter.

If the two offenses are not "actually" inconsistent, the rationale for this court's decision in *Tanner I* is no longer sound. The offenses do not involve mental states which are mutually inconsistent. It is not inconsistent for a trier of fact to find a defendant guilty of involuntary manslaughter and aggravated murder on the same indictment arising from a single killing.

Still of lingering concern is the apparent irrationality of a trier of fact returning different verdicts on different counts of the same indictment when both counts allege the same facts. This occurrence is not unprecedented under Ohio law nor is it held to prejudice the rights of the accused. The Ohio Supreme Court in *State v. Adams* (1978), 53 Ohio St.2d 223, 7 O.O.3d 393, 374 N.E.2d 137, was faced with a jury which returned a verdict of not guilty on the charge of aggravated robbery contained in the first count of the indictment and a verdict of guilty on the charge of aggravated murder contained in Count 2 of the indictment. The court upheld the verdict stating:

"The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent

responses to different counts, but only arises out of inconsistent responses to the same count." *Id.* at paragraph two of the syllabus.

Furthermore, the United States Supreme Court has reviewed in *United States v. Powell* (1984), 469 U.S. 57, 65, 105 S.Ct. 471, 476, 83 L.Ed.2d 461, 468, similar verdicts and stated:

"[I]nconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense."

The court in *Powell* went on to uphold the defendant's conviction on a charge of telephone facilitation, even though the jury had acquitted her on a predicate conspiracy count. The court stated in the syllabus:

"(e) * * * Respondent was given the benefit of her acquittal on the conspiracy count, and it is neither irrational nor illogical to require her to accept the burden of conviction on the telephone facilitation counts."

In the present matter, it is neither irrational nor illogical to require defendant to accept the burden of his conviction in view of the decisions previously discussed. A verdict of guilty of both involuntary manslaughter and aggravated murder on the same acts is not prejudicial.

Furthermore, as this court has recently noted in *State v. Newlin* (Aug. 5, 1993), Franklin App. No. 87AP–222, unreported, 1993 WL 308390, R.C. 2941.25(A) provides:

"Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted on only one."

■ It is well settled that a prosecutor may submit multiple counts stemming from the same offense to the jury and a jury may find a defendant guilty of both. See *State v. Osborne* (1976), 49 Ohio St.2d 135, 3 O.O.3d 79, 359 N.E.2d 78. R.C. 2941.25 resolves any prejudice which may occur by limiting conviction to only one count. Conviction is more than merely a finding of guilt; it is a combination of the verdict and sentence imposed. Accordingly, a defendant may be prosecuted and found guilty for two similar offenses but sentenced only on one to make it a conviction. *Newlin, supra.* In the present case, the trial court imposed sentence only on Count 2, aggravated murder. The trial court's actions were in accordance with law.

Based on the foregoing, defendant's second, third and fourth assignments of error are overruled.

■ Defendant's fifth assignment of error alleges that the prosecution failed to adequately prove the victim's death was the result of stab wounds inflicted during the course of the robbery. Therefore, defendant argues the prosecution has not proven the second prong of the *corpus delicti*, the existence of the criminal agency of another as the cause of death.

The evidence presented in this matter revealed that Billy McBride's death was a natural, reasonable and probable result of the stab wounds inflicted by defendant. The Deputy Coroner, Keith Norton, testified: "Yes, I believe that the stab wounds caused the death and it's just a matter of whether it was by causing loss of blood or by causing the fight or whatever, yes." The stab wounds were found to be the proximate cause of McBride's death and the fact that he died of complications brought on by the stab wounds does not relieve defendant of culpability.

In reviewing the evidence presented at trial, we find that a rational trier of fact could have found the essential elements of both aggravated murder and involuntary manslaughter proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

Based on the foregoing, defendant's fifth assignment of error is overruled.

■ Defendant's final assignment of error alleges certain evidence was excluded by the trial court prejudicing his right to a fair trial. The court has reviewed the record and finds defendant's argument without merit.

Defendant attempted to introduce evidence of the co-defendant's frame of mind prior to the incident pursuant to Evid.R. 803(3), which reads:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

" * * *

"(3) Then Existing, Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will."

The testimony excluded purported to establish that the co-defendant, Mark Burke, intended to seek violent revenge upon a third party, Lawrence Smith. The defense maintains that this evidence supported its theory Burke killed McBride for thwarting his plans to seek revenge against Smith.

The state of mind exception found in Evid.R. 803(3) " ' * * * may be used as the basis for introducing statements showing the forward-looking intent of the declarant for the purpose of proving that he thereafter acted in accordance with that intent.' * * * " *State v. Steffen* (1987), 31 Ohio St.3d 111, 120, 31 OBR 273, 281, 509 N.E.2d 383, 392, citing 4 Louisell & Mueller, Federal Evidence (1980) 540, Section 442. If defendant had been seeking to introduce the statements to prove Burke extracted revenge against Smith, clearly Evid.R. 803(3) would have applied. However, defendant sought to introduce the statements to prove Burke's intent to kill a third person. The statement does not reveal Burke's intent to kill McBride nor that he then acted on such an intent. Evid.R. 803(3) is not applicable and the trial court did not err in excluding it from evidence.

■ Defendant alleges that the trial court erred in excluding certain statements made by defendant to his sister several hours after McBride's death. Defendant maintains that the statements are admissible pursuant to Evid.R. 803(2) or, in the alternative, under the verbal completeness doctrine. Evid.R. 803(2) states:

"Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

For a statement to be admissible under Evid.R. 803(2), the party seeking its admittance is under the burden to prove the statement was made while the declarant was still under the stress of the event or occurrence. In the present case, the record does not reveal that defendant made the prerequisite showing that the statements were made while the declarant was still under the stress of the occurrence. It is the obligation of the party seeking to admit statements, pursuant to Evid.R. 803(2), to lay a proper foundation. In the present case, such a foundation has not been laid and, therefore, the trial court did not err in refusing to admit the statement based on Evid.R. 803(2).

The doctrine of verbal completeness is equally inapplicable in the present matter. As noted by this court in *State v. Watkins* (1981), 2 Ohio App.3d 402, 2 OBR 477, 442 N.E.2d 478, the doctrine does not apply to the contents of two separate conversations. *Id.* at 405, 2 OBR at 480, 442 N.E.2d at 481. Defendant is attempting to have his self-serving statements to one sister admitted based on his admitted statement against interest made to another sister. As two distinct conversations are involved, the doctrine is inapplicable.

■ Defendant also argues that the trial court erred in refusing to allow him to introduce evidence concerning the costs of DNA testing. Defendant argues the jury was left with the impression that defendant was making unreasonable demands on the police department. It is within the discretion of the trial

judge to determine what evidence shall be admitted. Absent an abuse of discretion, the trial judge's decision will not be overturned. *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 529 N.E.2d 1382.

A review of the record indicates testimony was presented which revealed the costs of DNA testing at the time of trial were significantly less than at the time of defendant's arrest. In view of the entire record, the court finds no abuse of discretion on behalf of the trial judge.

Defendant's sixth assignment of error is overruled.

Based on the foregoing, defendant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

TYACK, J., concurs in part and concurs separately in part.

BOWMAN, J., dissents.

TYACK, Judge, concurring in part and concurring separately in part.

Thus far, the Supreme Court of Ohio has not clearly explained how the Double Jeopardy Clause set forth in the Ohio Constitution compares with the Double Jeopardy Clause in the Fifth Amendment to the Constitution of the United States. Therefore, I do not agree that any prosecution which satisfies the Fifth Amendment to the Constitution of the United States automatically complies with Section 10, Article I, of the Ohio Constitution. However, I do not believe that the Supreme Court of Ohio will interpret Section 10, Article I in such a way as to bar retrial of an accused whose conviction has been reversed because of error in the trial court.

Having made that observation, I next turn to the problems still flowing from the blunder of the three-judge panel who conducted the first trial. The original trial judges, in rejecting the aggravated murder charge dependent upon a finding of prior calculation and design, apparently by mistake fastened on the wrong lesser-included offense. They jumped past a conviction for murder and found Tanner guilty of the lesser-included offense of involuntary manslaughter. I do not believe that they consciously rejected a purpose to kill in making this jump or they would have found Tanner "not guilty" of aggravated murder on the other theories set forth in the indictment, all of which still require a purpose to kill.

When the convictions came up on appeal originally, the panel assigned acknowledged the conflict between the original verdicts and ordered a new trial. Upon remand, for reasons which are not apparent, both the offense of involuntary manslaughter and the offense of aggravated murder were submitted to the trier of fact—this time a jury. Why the prosecution did not seek to dismiss the

separate involuntary manslaughter charge and simply prosecute the aggravated murder, which already has involuntary manslaughter as a lesser-included offense, is somewhat of a mystery. Certainly, the case could have been simplified at all stages if dismissal had been sought.

I do not view the jury verdicts at the second trial as inconsistent, since the jury did not consciously reject "purpose to kill" in finding Tanner guilty of involuntary manslaughter. Instead, the jury convicted Tanner of everything it could.

The more difficult question is whether the original acquittal of murder through an apparent oversight by the original three-judge panel establishes collateral estoppel as to subsequent findings which are dependent upon a finding of purpose to kill. In a situation where a subsequent trial is involved, collateral estoppel would normally apply. However, in Tanner's situation, I feel bound by the law of the case. The previous panel of this court did not apply collateral estoppel and vacate only the aggravated murder conviction. Instead, the panel vacated both convictions and ordered a new trial as to each. If our written opinions are to merit any respect, we should attempt at least to be consistent in our rulings in a given case. Therefore, I do not apply collateral estoppel here.

With the difference between my thinking and that of Judge Petree hopefully being clear, I also would overrule the first four assignments of error.

As to the fifth assignment of error, the medical testimony as to cause of death was murky. The stab wounds were in and of themselves nonlethal. For some reason not clearly ascertainable via an autopsy, McBride died at about the time he fought with Tanner and the other young man who also stabbed him. It is unclear whether he was literally scared to death, or his heart developed arrhythmias as a result of the assaults and/or stress, or for some other reason his heart apparently stopped while he was being stabbed. Given the facts before the jury and applying the legal standard set forth in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the fifth assignment of error is properly overruled.

As to the sixth assignment of error, I agree with Judge Petree's opinion.

As a result, I agree that all six assignments of error should be overruled and the judgment of the trial court should be affirmed.

Bowman, Judge, dissenting.

Appellant, James Tanner, Jr., and codefendant, Mark Burke, were charged *inter alia* with the aggravated murder of William McBride. The state contends that Tanner and Burke killed McBride in the course of committing aggravated robbery. Following a jury trial, Tanner was convicted of involuntary manslaughter, aggravated murder and aggravated robbery.

Since I am unable to agree with the majority as to the disposition of the second, third and fourth assignments of error, I must respectfully dissent. Despite the plethora of cases which attempt to somehow rationalize and approve the concept of inconsistent jury verdicts, the Ohio Supreme Court held in *State v. Johnson* (1983), 6 Ohio St.3d 420, 6 OBR 466, 453 N.E.2d 595, reversed and remanded on other grounds (1984), 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425, that, as to aggravated murder and involuntary manslaughter, where there was only one victim, the defendant may not be convicted of both offenses. The court held, 6 Ohio St.3d at 424, 6 OBR at 469, 453 N.E.2d at 599–600:

"Clearly, the common element shared by these two offenses is the causing of the death of another with the only distinguishing factor being the mental state involved in that act. Murder is the more serious offense in that it involves the purposeful killing of another. Involuntary manslaughter involves a lesser mental state as it is a killing which proximately results from the defendant's committing or attempting to commit another offense. It is manifestly obvious that these two states are mutually exclusive and that in any given killing the offender may be possessed of only one. Under the *Blockburger* analysis [*Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306], the possibility of proving a fact for one offense which is not required under the other is excluded. As such, in any case where there is but one victim, the accused may be found guilty of either murder or involuntary manslaughter but certainly not both." (Footnote omitted.)

Inasmuch as there was only one victim in this case, William McBride, Tanner could not be convicted of both aggravated murder and involuntary manslaughter for his death. For this reason, and as further discussed in this court's prior decision in *State v. Tanner* (Dec. 31, 1991), Franklin App. No. 91AP–263, unreported, 1991 WL 281410, I would sustain the second, third and fourth assignments of error and remand this matter to the trial court for further proceedings.