JOURNAL ENTRY AND OPINION
On July 7, 2000, the applicant, Quamaine Brooks, purusant to App. R. 26 (B) and State v. Murnahan (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204, applied to reopen this court's judgment in State of Ohio v. Quamaine Brooks (Mar. 30, 2000), Cuyahoga App. No. 75711, unreported, in which this court affirmed Mr. Brooks' convictions for felonious assault and child endangerment. On August 4, 2000, the State of Ohio filed its brief in opposition.
On December 13, 2000, Geraldine Brooks, pursuant to App.R. 26(B) and State v. Murnahan (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204, applied to reopen this court's judgment in State of Ohio v. Geraldine Brooks (Mar. 30, 2000), Cuyahoga App. No. 75712, unreported, in which this court affirmed Ms. Brooks' conviction for child endangerment.[1] On December 28, 2000, Ms. Brooks filed "Notice of Additional Authority Request for Evidentiary Hearing." On January 9, 2001, the State of Ohio filed its brief in opposition. On February 16, 2001, Ms. Brooks filed a reply brief. For the following reasons, this court denies both applications for reopening.
 FACTUAL AND PROCEDURAL BACKGROUND
Donald Stratford and Billie Jo Isom are the parents of Angelique Stratford, who was three months old in early March, 1998. While they worked, Donald and Billie Jo often left Angelique with Billie Jo's mother, Geraldine Brooks. Living at Geraldine's house, inter alia, were Geraldine's sister Elaine, Elaine's eight-year-old son, Michael; Geraldine's twenty-year-old son, Quamaine; Geraldine's oldest son, Rasheed Brooks; Rasheed's live-in lover, Wadell Jefferson, and their three children.
Angelique was dropped off at Geraldine's house on February 27, 1998. After an adult shook the little girl with considerable force on or about March 6, 1998, Angelique suffered Shaken Infant Syndrome, which caused very serious, permanent injuries, including brain damage. The Grand Jury indicted Geraldine for child endangering and Quamaine for felonious assault and child endangering.
At trial both Geraldine and Quamaine were represented by the same retained counsel. Before trial, the judge notified both of them of the potential danger for a conflict of interest because of the dual representation. Both agreed to the continued representation. During trial, Michael testified that he saw Quamaine abuse Angelique earlier than March 6. The jury found them guilty.
On appeal new counsel represented both Geraldine and Quamaine. Counsel argued the manifest weight of the evidence and the irregularity in allowing a jury of eleven to decide the case.
 QUAMAINE'S APPLICATION
Quamaine Brooks timely filed his application to reopen. He argues that his appellate counsel was ineffective for not arguing that his trial counsel was ineffective because during trial an actual conflict of interest developed which prevented the introduction of evidence favorable to Quamaine.
As part of the defense case, counsel called Wadell Jefferson to describe an unusual experience with Elaine, Geraldine's sister, approximately a month before Angelique's injury. The State immediately objected. Defense counsel proffered that in early February Elaine suffered some sort of breakdown, that Wadell "came up to her apartment and that she [Elaine] hurt her children," that the police had to take Elaine away and that after she received treatment she returned to Geraldine's house in late February 1998. Defense counsel stated that his theory was to show that Elaine, not Quamaine, could have been the one to injure Angelique. The trial court did note that this would be a conflict of interest because, while such testimony might raise a reasonable doubt as to Quamaine's guilt, it would also incriminate Geraldine for child endangerment
However the State then posed other objections, based on hearsay and the accuracy of the proffer. The prosecutor noted that according to discovery Wadell would testify that Elaine told Wadell that Elaine was going to hurt the children, which statement is hearsay. Wadell never reported that Elaine actually hurt the children. The prosecutor then intimated that if Wadell changed her story she would be perjuring herself. The trial judge disallowed the evidence on conflict of interest and hearsay. (Tr. 439-443.)
Quamaine argues that allowing an actual conflict of interest to develop during trial is ineffective assistance of counsel, which requires reversal. Wood v. Georgia (1981), 450 U.S. 261, 67 L.Ed.2d 220,101 S.Ct. 1097; United States of America v. Dolan (C.A. 3 1978), 570 F.2d 1177; State v. Gillard (1997), 78 Ohio St.3d 548, 619 N.E.2d 276, cert. denied (1998), 523 U.S. 1108; and State v. Manross (1988), 40 Ohio St.3d 180,523 N.E.2d 735.
In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, cert. denied (1990), 497 U.S. 1011, 110 S.Ct. 3258.
In Strickland, the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland,104 S.Ct. at 2065.
Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes (1983), 463 U.S. 745,77 L.Ed.2d 987, 103 S.Ct. 3308, 3313. Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on apellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in State v. Allen (1996), 77 Ohio St.3d 172, 672 N.E.2d 638.
Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: That is, but for the unreasonable error there is a reasonable, probability that the results of the proceeding would have been different. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.
In the present case Quamaine's argument on ineffective assistance, of appellate counsel is not well taken. In order to establish ineffective assistance of counsel in this case, appellate counsel has to establish an actual conflict existed. An actual conflict would not exist if it depended on inadmissible evidence, such as hearsay. Cf. Gillard, supra; State V. Kersy (Jan. 19, 2001), Miami App. No. 2000-CA-36, unreported. The mere possibility of a conflict of interest is insufficient to impugn a criminal conviction. Manross, 40 Ohio St.3d at 182.
If Wadell's hearsay statements were unquestionably admissible, then there would have been an actual conflict of interest. There could be no doubt that trial counsel could have pursued a strategy which would incriminate one of his clients while it also was a benefit to the other client. Thus the issue is the admissibility of the hearsay statements. In concluding the sidebar, the trial judge categorically ruled; "You are not getting into hearsay. Everything you have gotten is hearsay ***J' (Tr. 443.) The standard for the admissibility of hearsay is an abuse of discretion. Columbus v. Taylor (1988), 39 Ohio St.3d 162, 529 N.E.2d 1382; State v. Tanner (1993), 90 Ohio App.3d 761, 630 N.E.2d 751 and State v. Banks (1986), 31 Ohio App.3d 57, 508 N.E.2d 986. Appellate counsel could reasonably conclude in the exercise of his professional judgment that an appellate court would rule that it was not abuse of discretion to exclude this hearsay evidence. Although Elaine's statement might be admissible under Evid.R. 803(3) ("Then existing, mental, emotional, or physical condition"), such hearsay evidence has been excluded when offered to implicate a third person. State v. Greer (1988), 39 Ohio St.3d 236,530 N.E.2d 382 and State v. Tanner (1993), 90 Ohio App.3d 761,630 N.E.2d 751. Cf. State v. Hawn (2000), 138 Ohio App.3d 449, 460,741 N.E.2d 594 (such evidence invites speculation, not rational inference). Moreover, this evidence relating to Elaine took place approximately a month before the abuse of Angelique and was directed apparently at other children. Thus appellate counsel would also have to establish relevancy in arguing that disallowing this evidence was an abuse of discretion.
If the hearsay evidence is inadmissible, then appellate counsel is left to argue the conflict of interest issue on the speculator and inferences arising from an uncertain proffer. Appellate counsel in the exercise of reasonable professional judgment could conclude that an appellate court would be very unlikely to find an actual conflict of interest based on such uncertainty and speculation.[2] Cf. Gillard, supra; State v. Getsy (1998), 84 Ohio St.3d 180, 702 N.E.2d 866, cert. denied (1999),527 U.S. 1942; and State v. Gonzales (Nov. 18, 1998), Athens App. No. 97CA52, unreported. Following the admonition of Barnes, this court will not second guess the reasonable, professional judgments of appellate counsel in choosing arguments.
 GERALDINE'S APPLICATION
Geraldine filed her application to reopen approximately eight months after this court's opinion was journalized. App.R. 26(B)(1) and (2)(b) require applications claiming ineffective assistance of appellate counsel be filed within ninety days from journalization of the decision unless the applicant shows good cause for filing at a later time. To show good cause to avoid dismissal, Geraldine argues that she did not apply earlier because she did not know of the remedy until June 2000, at which time she withdrew her appeal to the Supreme Court of Ohio to pursue App.R.26 (B). However, her claims of ignorance of the law because she is a layman and of her mistaken choice of a supreme court appeal as a remedy are not persuasive to establish good cause. State v. Klein (Apr. 8, 1991), Cuyahoga App. No. 58389, unreported, reopening disallowed (Mar. 15, 1994), Motion No. 49260, affirmed (1994), 69 Ohio St.3d 1481; State v. Trammell (July 24, 1995), Cuyahoga App. No. 67834, unreported, reopening disallowed (Apr. 22, 1996), Motion No. 70493; State V. Cummings (Oct. 17, 1996), Cuyahoga App. No. 69966, unreported, reopening disallowed (Mar. 26, 1998), Motion No. 92134; and State v. Young (Oct. 13, 1994), Cuyahoga App. Nos. 66768 and 66769, unreported, reopening disallowed (Dec. 5, 1995), Motion No. 66164. Ignorance of the law is no excuse. She also argues that to apply the ninety-day limitation rigidly would frustrate the purpose of App.R. 26 (B) to provide a remedy for errors made by appellate counsel. However, as shown above, the courts have rigidly applied the limitations period. This defect alone is sufficient to dismiss the application.
Her arguments, moreover, are meritless. Her first argument is that her right to a speedy trial pursuant to R.C. 2945.71 et seq. was violated. However, the record does not support that proposition. She was arrested on March 13, 1998 and went to trial on October 26, 1998, a total of 227 days, which is well within the 270-day limit provided by R.C. 2945.71
(C). Thus the only way she could have been denied her right to a speedy trial was if she had spent a considerable time in jail without waiver. The trial court initially set her bond at $100,000, but on March 23, 1998, it reduced bond to $5,000. The sentencing entry gave her jail time credit of fifteen days, indicating she made bond. Allowing for the triple time provision for those fifteen days increases the time to trial to 257 days, still within the limit. Furthermore, journal entries continuing trial at defendant's request would subtract another eighty-five days from the total. Geraldine complains that she did not consent to these extensions, but the record gives no indication of any impropriety. Appellate counsel was not deficient for failing to argue an issue not supported by the record.
Next, Geraldine argues that her appellate counsel improperly argued the eleven-person jury issue; she claims that he should have framed this argument as "void for vagueness" and thus violative of due process. She maintains that the trial judge rendered Crim.R. 23(B) void for vagueness by allowing the trial to proceed with eleven jurors. Appellate counsel, however, properly argued the issue directly.
Finally, she argues that her appellate counsel should have argued that her sentence was too harsh for a first-time offender. The trial judge imposed the maximum sentence because of the severe and permanent injuries to Angelique and because of the evidence presented that Geraldine had to have known about the injuries but did not seek medical care; instead she tried to shuffle Angelique back to her parents as if nothing had happened. Given the evidence, appellate counsel could reasonably conclude in the exercise of professional judgment that arguing the harshness of the sentence was inappropriate.
Accordingly, these applications for reopening are denied.
TIMOTHY E. McMONAGLE. J., and MICHAEL J. CORRIGAN CONCUR.
[1] The cases against these two defendants have been consolidated from the beginning.
[2] This analysis remains valid even though appellate counsel represented both Quamaine and Geraldine on appeal. The speculative nature of the argument is a function of the uncertainty of the proffer and the admissibility of the hearsay evidence.