JOURNAL ENTRY AND OPINION
Defendant-appellant Geneva Banks ("appellant") appeals from her conviction for involuntary manslaughter.
Appellant raises the following errors for review:
 I. THE TRIAL COURT ERRED IN FAILING TO ALLOW THE TESTIMONY OF DEFENSE WITNESSES TO PRIOR ACTS OF THE MURDER VICTIM'S VIOLENT BEHAVIOR FOR REASONS INCLUDING BUT NOT LIMITED TO, EVIDENCE THAT THE VICTIM WAS MORE LIKELY THE AGGRESSOR AS HE HAD THIS CHARACTER TRAIT, WHICH WAS AN ESSENTIAL ELEMENT OF THE DEFENDANT/APPELLANT'S PRESENTATION.
 II. THE RECORD FAILS TO REFLECT THAT THE COURT INQUIRED AS TO THE PLAINTIFF AND DEFENDANT'S SATISFACTION WITH THE JURY INSTRUCTIONS AND IN ERROR PROCEEDED TO GIVE THE INSTRUCTION TO THE JURY.
 III. THE COURT HAS IN ERROR ALLOWED NON-EXPERT TESTIMONY FROM THE PLAINTIFF'S WITNESSES WITHOUT PROPER QUALIFICATION OF THE WITNESS AS AN EXPERT UPON THE SUBJECT FOR WHICH HE TESTIFIED AND WITHOUT THE PROVISION OF AN EXPERT REPORT TO THE DEFENSE PRIOR TO TRIAL. THE COURT'S ERROR INCLUDED THAT NONE OF THESE EXPERT WITNESSES WERE IDENTIFIED BY REPORT OR EVEN IDENTIFIED AS EXPERT WITNESSES IN THE DISCOVERY FROM THE PLAINTIFF TO THE DEFENDANT PRIOR TO TRIAL.
 IV. THAT THE COURT ADMITTED EXHIBITS OF THE PLAINTIFF/APPELLEE AND DENIED THOSE OF THE DEFENDANT/APPELLANT IN ERROR.
 V. THAT THE DECISION OF THE COURT IN OVERRULING THE DEFENDANT'S RULE 29 MOTION AND FINAL DETERMINATION OF THE JURY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 VI. THAT THE ACTIONS OF THE TRIAL COURT REPRESENTED ERROR IN A CUMULATIVE AFFECT OF THE COURT'S DEMEANOR, STATEMENTS BEFORE THE JURY, RULINGS INCLUDING THOSE IN ERROR, AND PROHIBITION OF TESTIMONY TOGETHER DEPRIVED THE DEFENDANT/APPELLANT OF A FAIR AND IMPARTIAL TRIAL TO WHICH SHE IS ENTITLED IN LAW AND IN THE INTEREST OF JUSTICE.
Finding the appeal to lack merit, the judgment of the trial court is affirmed.
 I.
On July 12, 1998, at approximately 1:40 a.m., Cleveland paramedic Michael Threat responded to a 911 hang-up call made from 3363 East 142nd Street. Threat arrived at the two-family duplex and noted that no lights were on in the residence. Threat knocked on the front door for a couple of minutes before hearing someone descend the stairs from the upper unit and unlock the door. The door opened to reveal appellant wearing only a pair of pantyhose. Appellant yelled at Threat to get in here before she turned and ran up the stairs. Threat followed appellant through the darkened apartment to the kitchen where he saw the silhouette of someone lying on the floor.
Threat asked appellant to turn on the lights. Forty-six year old Lee Anderson was supine in a pool of blood. Threat thought Anderson had struggled to rise. The victim was conscious at the time but was very weak from blood loss and unable to speak. In response to Threat's query, appellant related that someone had stabbed Anderson and run out of the house. Appellant would not answer any further questions, refusing even to tell Threat her name or that of the victim. Threat did not notice any signs of an attempt to administer any medical aid to Anderson. Threat ordered appellant to assist in carrying the victim to the ambulance.
Cleveland police officer John Freehoffer arrived as Anderson was being placed in the ambulance. Appellant stood next to the ambulance. She turned, saw Officer Freehoffer, and went back into the house without speaking to him. Accompanied by other officers who responded to the call, Freehoffer knocked on the front door for three to five minutes before appellant answered and let the police into the house.
Officer Freehoffer observed bloody impressions of bare feet on the steps leading to the upstairs unit. Appellant now wore a long tee-shirt over her pantyhose. There was blood on her face and pantyhose but very little on the shirt. Lieutenant Skorapys began asking appellant for basic information, such as her name and age. Appellant became outraged, stating that could wait until she saw her friend at the hospital. Appellant wanted the police to leave the premises.
After calming down, appellant first said she was sleeping when the stabbing took place. At another point, appellant stated she was in the bathroom. Upon being further pressed for details, appellant related that the victim answered a phone call in the kitchen. As Anderson hung the phone up, he answered the door. Anderson then was stabbed in the kitchen by an unknown assailant.
Officer Freehoffer began investigating the residence. A large pool of blood was on the kitchen floor. Bloody water was in a blood-smeared bathroom sink. Blood splatters were discovered on the walls and bed in one of the bedrooms. There was a trail of blood from that bedroom to the kitchen. The police found a knife under the living room couch and another behind some books in a second bedroom. The officers did not notice any broken glass.
Appellant became hysterical upon being informed that the scientific investigation unit would be called. Appellant told the officers to leave because too many police already were there and she wanted to see Anderson. Appellant refused to cooperate with police and was arrested. Appellant did not suffer from any injuries but the police transported appellant to the hospital to be decontaminated. Appellant continued to be difficult during the transportation to the hospital and police station.
On July 29, 1998, appellant gave a statement to the police. In her statement, appellant said Anderson came to her home to retrieve some information about a possible job. Appellant eventually told Anderson she intended to get ready for bed. When appellant exited the bathroom, she discovered Anderson in her bedroom. An argument ensued between the two which turned into a physical altercation. Appellant stated Anderson threw her partway through the bedroom window. Appellant broke away from him and ran to the kitchen. There, Anderson began to choke her while she was against the stove. Appellant picked up a burner from the stove and struck Anderson in the head. When hitting Anderson in the head failed to get him to end his choke hold, appellant felt around for other objects, finding a knife. Appellant grabbed the knife and stabbed Anderson.
Anderson was taken to the hospital where he received treatment for his injuries. A wound to his lower neck cut Anderson's internal jugular vein and left subclavian artery. Both were surgically repaired. He sustained a flesh wound in his chest. While in the hospital, Anderson contracted pneumonia in both lungs as well as a blood infection. He remained on life-support and was unable to walk, talk, or respond. Anderson expired on July 30, 1998. The coroner found that the cause of death was complications stemming from the two stab wounds. His death was ruled a homicide.
The Grand Jury indicted appellant for one count of murder in Anderson's death. At trial, the defense was not permitted to present witnesses, other than appellant, to testify regarding specific instances where Anderson acted in a violent manner. Appellant testified about a number of incidents in which Anderson physically abused her and others. Appellant again related that on the day of the stabbing, Anderson and she argued. Anderson began to hit her, throwing her against both bedroom windows, breaking the glass. Appellant feared for her life when Anderson began to choke her in the kitchen. Appellant struck his head with a grate from the stove but Anderson continued to press his attack. It was then that appellant's hand came in contact with the knife. Appellant stabbed Anderson twice. Appellant stated she had no intent to kill the "subsequently deceased" but just wanted to end his strangulation. Appellant denied anyone was stabbed or injured in the bedroom. Various defense witnesses then testified about Anderson's reputation in the community.
The jury convicted appellant of the lesser-included offense of involuntary manslaughter in the commission of a felony. The trial court sentenced appellant to a six-year term of imprisonment.
 II.
In her first assignment of error, appellant contends the trial court abused its discretion by refusing to allow her to present evidence pertaining to the victim's violent character. Appellant argues that she should have been permitted to present other witnesses who would have testified regarding specific instances of Anderson's violent behavior.
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court and will not be disturbed upon appeal unless that discretion is abused. State v. Combs (1991), 62 Ohio St.3d 278, 284; State v. Sage (1987), 31 Ohio St.3d 173. An abuse of discretion connotes more than a error of law or judgment. There must be a finding that the trial court's attitude was arbitrary, unreasonable, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151.
Generally, evidence about a person's character is inadmissible for the purpose of proving he or she acted in conformity therewith on a particular occasion. Evid.R. 404(A). An exception to this rule is set forth in Evid.R. 404(B)(2) which provides, inter alia, that the accused may offer evidence of a pertinent trait or character of the victim. However, specific instances of conduct may be admitted into evidence only when the character or trait of character is an essential element of a charge, claim, or defense. Evid.R. 405(B). Otherwise, admissible evidence regarding character or trait of character is limited to reputation or opinion of the victim's character. Evid.R. 405(A).
Appellant states that an essential element of self-defense was the character of the victim. This assertion is contrary to prevailing case law. The elements of self-defense are (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he or she was in imminent danger of death or great bodily harm; and (3) that the defendant's only means of escape from the danger was in the use of such force. State v. Robbins (1979), 58 Ohio St.2d 74,80. The crucial element of self-defense is the state of mind of the defendant. State v. Koss (1990), 49 Ohio St.3d 213, 215. In contrast, the character of the victim is not an essential element of self-defense. State v. Carlson (1986), 31 Ohio App.3d 72,74.
Admissible evidence concerning the victim's character when self-defense is raised falls into two categories. The first is testimony offered to prove the defendant's state of mind at the time of the incident. The defendant may offer his or her own testimony regarding specific instances of the victim's prior violent conduct in order to establish his or her state of mind. State v. Cuttiford (1994), 93 Ohio App.3d 546.
The second category is testimony about the victim's character offered to prove the victim was more likely the aggressor. State v. Baker (1993), 88 Ohio App.3d 204. Testimony for this category is limited to reputation for violence or opinion evidence. Evidence about specific acts is not permitted. Id.
Appellant wished to present evidence of specific instances of Anderson's violent behavior through the testimony of various witnesses. Clearly, this is not permissible under Evid.R. 405. Corroborating evidence concerning specific instances of the victim's violent character should be excluded by a trial court. See State v. Spinks (1992), 79 Ohio App.3d 720. The trial court did not abuse its discretion by refusing to admit evidence of specific instances of violent incidents by Anderson from witnesses other than appellant.
Appellant's first assignment of error lacks merit.
 III.
In her second assignment of error, appellant asserts the trial court erred by not specifically asking counsel whether they were satisfied with the jury instructions or wished to object. Appellant contends the omission resulted in prejudicial error requiring reversal of her conviction.
Crim.R. 30(A) provides in pertinent part:
 On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.
After the trial court instructed the jury the following exchange took place:
MR. WATSON: Your Honor, may I address my proffer at this time?
THE COURT: No, no. You address the instructions right now.
MR. WATSON: Oh, yes.
Defense counsel then went on to state his concern about the instruction given on self-defense. Crim.R. 30(A) requires the trial court give counsel the opportunity to object to the charge but does not require that the trial court specifically inquire about the attorneys' satisfaction or dissatisfaction with the jury charge. Appellant received his opportunity to object and did indeed object. The trial court did not prejudice appellant by failing to ask a question it is not required to ask under the rule. Further, appellant had her opportunity to object.
Appellant's second assignment of error lacks merit.
 IV.
In her third assignment of error, appellant contends the trial court abused its discretion by permitting the police officers to testify as expert witnesses. Specifically, appellant points to the testimony of two police officers that blood splatters found in the bedroom were created at the time Anderson was stabbed. The officers stated that splatters occur when a person is stabbed.
Some of the testimony to which appellant now objects was elicited during cross-examination. Any error with respect to this testimony was invited by the defendant. A party who invites an error may not demand a reviewing court shield him from the consequences. State v. Jones (1996), 114 Ohio App.3d 306.
Evid.R. 701 provides:
 If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perceptions of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue.
In State v. Whittsette (Feb. 13, 1997), Cuyahoga App. No. 70091, unreported, this court held that a police detective's testimony that he doubted a wound was caused by a .22 caliber gun was properly admitted under Evid.R. 701. The officer based his opinion on his familiarity with guns and past observances of gunshot wounds. In State v. Norman (1982), 7 Ohio App.3d 17, this court held that a police officer properly testified as a non-expert in regard to the shot pattern made by a 12-gauge shotgun. In State v. Morris (1982), 8 Ohio App.3d 12, this court held the trial court correctly admitted the testimony of a police officer that a gun had not been fired after smelling the barrel. In State v. Moore (Feb. 12, 1999), Lucas App. No. L-97-1448, unreported, the Sixth District Court of Appeals held that a police officer could give non-expert testimony that a stain appeared to be blood.
Appellant's concerns with the officers' testimony revolve around their statements that a knife wound will result in a blood splatter at the time of the stabbing. That a liquid will spurt out after the sudden release of pressure hardly is a fact beyond the experience of the average person requiring an expert opinion. The officers testified about facts which they themselves observed based upon their personal experiences. The testimony properly was admitted as lay opinion evidence under Evid.R. 701. Further, appellant cannot demonstrate prejudice. The deputy coroner also testified that the severing of an artery will cause the blood to spurt out.
Appellant's third assignment of error lacks merit.
 V.
In her fourth assignment of error, appellant argues the trial court erred by refusing to admit various defense exhibits into evidence at the close of evidence. Appellant asserts that records of the victim's criminal history and various police reports should have been admitted into evidence and then incorporates by reference the arguments made at trial by defense counsel. In this respect, appellant has not presented a brief which conforms to App.R. 16(A)(7).
Further, the exhibits in question are not in the record before this court. Obviously, a reviewing court only can consider matters found within the record. The appellant has the duty of providing a reviewing court with a record of the facts, testimony, and evidentiary matters which are necessary to support the appellant's assignments of error. Volodkevich v. Volodkevich (1989), 48 Ohio App.3d 313.
 When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.
Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 199. Because appellant did not provide this court with an adequate record, the judgment of the trial court will be presumed to be valid and affirmed.
Appellant's fourth assignment of error is overruled.
 VI.
In her fifth assignment of error, appellant contends her conviction was against the manifest weight of the evidence and not supported by sufficient evidence. Specifically, appellant argues that there was no evidence showing heat of sudden passion or deliberate intent to cause Anderson's injury. Appellant also disputes she caused Anderson's death, maintaining his demise was the result of pneumonia contracted at the hospital.
A trial court is required to grant a motion for acquittal made pursuant to Crim.R. 29 if the evidence is insufficient to support a conviction for the offense. State v. Pickett (1996), 108 Ohio App.3d 312,314. A trial court shall not grant a Crim.R. 29 motion "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt". State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus.
Sufficiency is a legal standard which is applied to determine whether the evidence admitted at trial is legally sufficient to support the verdict as a matter of law. State v. Thompkins (1997),78 Ohio St.3d 380.
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus. In essence, sufficiency is a test of adequacy. Whether the evidence presented in a case is legally sufficient to sustain a verdict is a question of law and a conviction based upon legally insufficient evidence constitutes a denial of due process. Thompkins, supra.
To determine whether a conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins, supra, at 387, citing State v. Martin (1983), 20 Ohio App.3d 172,175.
A person is guilty of involuntary manslaughter if he or she causes the death of another as a proximate result of committing or attempting to commit a felony or a misdemeanor. R.C. 2903.04. In the instant case, felonious assault was the underlying offense. Felonious assault occurs, inter alia, when a person knowingly causes serious physical harm to another. A person acts knowingly when he is aware his conduct will probably cause a certain result.
R.C. 2901.22(B). Neither a sudden passion nor an intent to cause death are elements of the offense.
In State v. Davis (Feb. 12, 1999), Montgomery App. No. 16255, unreported, the court upheld a conviction for involuntary manslaughter where the defendant testified she shot the victim in the arm in make him stay away from her. The court concluded the jury could easily have inferred the defendant lacked a purpose to kill the victim but did intend to cause physical harm by using a deadly weapon.
In the instant case, appellant admitted using a knife and stabbing Anderson twice. The act of brandishing a knife may be sufficient to sustain a conviction for felonious assault. State v. Brown (1994), 97 Ohio App.3d 293. The physical evidence found at the scene did not support appellant's version of events. Instead, the physical evidence showed that the stabbing took place in the bedroom while Anderson was on the bed. Appellant's actions after Anderson was wounded delayed treatment from being administered and cast further doubt upon her story of what transpired that night. However it is clear that appellant did knowingly stab Anderson, causing him to suffer physical harm.
Appellant argues that, although she did stab Anderson, his death resulted from the pneumonia he acquired in the hospital. The deputy coroner testified that the cause of death was complications from the two stab wounds. The doctor stated that the cause of death is the initial event that sets off the string of lethal events, culminating in the victim's death. Anderson's stab wound to the left neck required medical and surgical intervention. The pneumonia Anderson acquired in the hospital was directly due to the injuries caused by appellant.
In State v. Tanner (1993), 90 Ohio App.3d 761, the court held that the fact the victim died from complications brought on by stab wounds did not relieve the defendant of his culpability in causing the death. The victim's demise was the natural, reasonable, and probable result of the stabbing.
Even if an infection was caused by the negligence of the medical staff who attended to the victim, the chain of direct causation will not be broken. The injuries need not be the sole cause of death as long as they constitute a substantial factor for the death. State v. Beaver (1997), 119 Ohio App.3d 385, citing State v. Johnson (1977), 60 Ohio App.2d 45, 52. Only gross or willful maltreatment will relieve the defendant from culpability. Id. After all, medical treatment for homicide victims is not an intervening cause of death. State v. Carter (1992), 64 Ohio St.3d 218. There is no evidence Anderson received medical care which could be considered gross or willful maltreatment. The fact that Anderson contracted pneumonia while in the hospital does not absolve appellant of the consequences of her actions. Her act of stabbing Anderson directly led to his admittance into the hospital. Appellant's conviction was neither against the manifest weight of the evidence nor supported by insufficient evidence.
Appellant's fifth assignment of error is meritless.
 VII.
In her final assignment of error, appellant claims that cumulative errors by the trial court deprived her of a fair trial. A conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial, even though each of numerous instances of trial court error does not constitute cause for reversal. State v. Garner (1995), 74 Ohio St.3d 49, 64. Appellant does not specifically mention which errors she is objecting to in her appellate brief. This court cannot properly review the assignment of error in light of appellant's failure to set forth the claimed errors. See App.R. 12 and 16. Further, this court has found no error occurred when reviewing appellant's previous assignments of error.
Appellant's sixth assignment of error is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The Defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ______________________ LEO M. SPELLACY, JUDGE
ANN DYKE, Adm. J. and PATRICIA A. BLACKMON, J. CONCUR.