DECISION AND JOURNAL ENTRY
Defendant, Ray Smith, Jr., has appealed from his convictions in the Lorain County Court of Common Pleas for aggravated murder, aggravated robbery, and tampering with evidence. We affirm.
On December 23, 1997, Defendant went to work at the Friendly's Restaurant ("Friendly's") on East Broad Street in Elyria, Ohio at 11:00 p.m. Defendant was employed there as a grill cook, but was there that evening to fill in for the janitor, who was out sick. The only other employees present at that time were the victim, Angela Galloway, who was a supervisor at the restaurant, and Elizabeth Ault, who performed various duties at the restaurant. When Ms. Ault left work between 11:15 p.m. and 11:30 p.m., only Defendant and the victim remained.
The victim's boyfriend, Brady Schroeder, began paging the victim at approximately 1:00 a.m., as he had expected her to arrive home between 12:15 a.m. and 12:45 a.m. At approximately 1:30 a.m., he went out to look for her and eventually asked the victim's father and one of the victim's friends to help him. Mr. Schroeder called the police at 4:00 a.m.
At 6:30 a.m. on December 24, 1997, Tuanna Foltz, Friendly's assistant manager, arrived at the restaurant to open for the day. Upon arrival, she discovered the back door of the restaurant ajar, the office door unlocked, and the inner door of the safe jammed open. She also determined that $2,815.45 was missing from the restaurant. At 12:10 p.m. on December 24, 1997, police discovered the victim's car in a hospital parking lot near the restaurant. The victim's body was in the trunk. It was later established that the victim was murdered between 12:30 a.m. and 12:45 a.m. and her body placed in the trunk of her car sometime before 5:50 a.m. The coroner determined that the victim died from a violent homicide resulting from asphyxia.
After leaving the restaurant, Defendant walked home and made phone calls to friends, Patty Jones and Pamela Wild at approximately 1:15 a.m. and 1:47 a.m., respectively. Then Defendant went out and bought a pack of cigarettes at approximately 2:00 a.m. After going home and sleeping until 7:30 a.m., Defendant went out and paid some bills.
Detective Michael Dussel, the detective in charge of the case, arrested Defendant on the morning of December 24, 1997, on an unrelated charge for passing a bad check. He advised Defendant of his Miranda rights before Defendant was transported to the police department and advised him again upon arrival at the station. Defendant indicated his consent and signed a waiver. Detective Dussel spoke with Defendant from 10:00 a.m. until noon regarding a possible burglary at Friendly's, after which time Defendant asked to make a phone call and was allowed to do so.
Sergeant Michael Behne also spoke to Defendant on December 24, 1997, at approximately 1:30 p.m., 4:15 p.m., and 5:30 p.m. Defendant ended the interview at 5:45 p.m. when he asked for an attorney. Defendant spoke to Attorney Joel Fritz in his effort to contact Attorney David Long. Attorney Fritz told Defendant not to make any statements and forwarded Defendant's message to Attorney Long. Attorney Long arrived at the police station later that evening and spoke to Defendant.
At 10:30 p.m. Defendant made a request to smoke, which Attorney Long approved before he left the premises. Sergeant Behne took Defendant to a ventilated interview room to smoke, as the Elyria Police Station is a non-smoking facility. After Defendant lit his cigarette, he placed his arms on his knees, crossed his shaking hands and hung his head. Then Defendant volunteered the statement, "I don't know why I did this." Sergeant Behne said, "what?" and Defendant continued talking. He stated, "I blacked out. I did this before." Sergeant Behne asked if the incident was sexual in nature, and Defendant said it was not and that he didn't know what came over him. Sergeant Behne asked whether the murder took place in the restaurant or in the victim's car. Defendant responded that he didn't know. When asked whether he panicked, put the victim's body in the trunk of the car, and wiped his fingerprints from the car, he responded, "What do you think?" After this conversation, Defendant stated he did not want to say anything else on the advice of his attorney.
On February 18, 1998, Defendant was indicted on one count of aggravated murder, in violation of R.C. 2903.01(B), with one death penalty specification; one count of aggravated robbery, in violation of R.C.2911.01(A)(3); one count of gross abuse of a corpse, in violation of R.C. 2927.01(B); and one count of tampering with evidence, in violation of R.C. 2921.12(A)(1).
Before trial, Defendant twice moved pro se for new counsel, one of which was withdrawn after a hearing. He also moved to suppress the statements he made while in police custody. The trial court denied the motion to suppress.
Following a jury trial, Defendant was found not guilty of gross abuse of a corpse, but guilty of aggravated murder; guilty as to the principal offender death penalty specification; guilty of aggravated robbery; and guilty of tampering with evidence. Defendant was sentenced to life imprisonment with no possibility of parole for the charge of aggravated murder, ten years imprisonment for aggravated robbery, and five years for tampering with evidence. All sentences are to run consecutively. Defendant timely appealed and has raised six assignments of error for review. We address each in turn, rearranging them for ease of review.
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED WHEN IT PERMITTED THE STATE TO INTRODUCE EVIDENCE OF OTHER "BAD" ACTS BY [DEFENDANT] IN VIOLATION OF OHIO RULE OF EVIDENCE 404(B) AND OHIO REVISED CODE § 2945.59, THEREBY DENYING [DEFENDANT] HIS RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
Defendant argues in his first assignment of error that the trial court erroneously permitted the State to present evidence regarding Defendant's two prior acts of theft from employers. He contends that the testimony of three witnesses regarding the prior acts was inadmissible under Evid.R. 404(B) and R.C. 2945.59. We will address the testimony of each witness separately.
A trial court enjoys broad discretion in the admission and exclusion of evidence and will not be reversed absent a clear abuse of discretion which materially prejudiced the objecting party. Williams v. Oeder
(1995), 103 Ohio App.3d 333, 341. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
R.C. 2945.59 and Evid.R. 404(B) provide the rules for the admission of other crimes, wrongs, or acts. They establish several circumstances in which evidence of the defendant's other acts may be admitted into evidence. The acts may be used to prove the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B); accord R.C. 2945.59. It is well settled that "[b]ecause R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict."State v. Broom (1988), 40 Ohio St.3d 277, paragraph one of the syllabus.
In State v. Broom, the Ohio Supreme Court established two requirements for the admission of other acts evidence: (1) substantial evidence must prove that the other acts were committed by the defendant as opposed to another person, and (2) the evidence falls within one of the theories of admissibility listed in Evid.R. 404(B). Id. at 282-83; see, also, Statev. Lowe (1994), 69 Ohio St.3d 527, 530. In this case, Defendant does not dispute that he committed the prior acts of theft. Therefore, the only question is whether the State may use the prior acts to establish motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. See State v. Broom, 40 Ohio St.3d at 282-83.
 A. Testimony of Lisa Smith
The first area of other acts evidence that Defendant assigns as error concerns the testimony of Lisa Smith, Defendant's ex-wife. On cross-examination, defense counsel questioned Ms. Smith about the time period in which Defendant worked at Sunshine Farms (a division of ConSun Food Industries) and when he left that employment as follows:
Q. Where did he work at?
A. During what time period?
Q. Well, let's talk about 1997.
A. He worked for Sunshine Farms.
* * *
Q. Do you know when he left Sunshine Farms?
A. It was September of '97.
On redirect, the prosecution inquired into the circumstances under which Defendant left his employment, as follows:
 Q. Now, [defense counsel] also said, or got you to say that [Defendant] worked at [Sunshine Farms].
A. Yes.
* * *
Q. And I think he asked you or said that he left there?
A. Yes.
Q. Did he leave there?
A. No, he was fired.
Q. For what?
A. For stealing money.
[Defense counsel]: Objection, Your Honor.
The Court: Overruled.
Defendant argues that the admission of the testimony from Ms. Smith regarding Defendant's termination due to theft was in contravention of Evid.R. 404(B) and R.C. 2945.59. We disagree.
In the present case, the pertinent testimony was not admitted for one of the limited purposes enumerated in Evid.R. 404(B). The record before us clearly demonstrates that on cross-examination defense counsel questioned Ms. Smith regarding Defendant's employment and when he left that employment. On re-direct the prosecution inquired as to the details of Defendant's leaving. Thus, defense counsel opened the door on cross-examination to the admission of evidence regarding Defendant's prior act of theft and this waives any objection to the evidence of other acts. See State v. Waver (Aug. 19, 1999), Cuyahoga App. No. 73976, unreported, 1999 Ohio App. LEXIS 3860, at *22. Once the door is opened, it is not error for the other acts to be admitted. Id. "The [S]tate did no more than walk through a door opened by [Defendant]." Id.
Therefore, the admission of Lisa Smith's testimony regarding Defendant's 1997 termination for stealing from his employer was not error.
 B. Testimony of Dennis Walters
The second area of other acts evidence that Defendant assigns as error concerns the testimony of Dennis Walters, president of ConSun Food Industries, Inc. ("ConSun"), Defendant's previous employer. Mr. Walters testified during the State's case-in-chief as to the details of Defendant's theft from ConSun and the subsequent termination of Defendant's employment in September 1997. Mr. Walters stated that Defendant had accepted cash payments from customers on his delivery route and then altered business receipts to hide the theft. He also testified that Defendant purchased large amounts of instant lottery tickets from the company store. Defendant argues that the admission of Mr. Walter's testimony violated Evid.R. 404(B) and R.C. 2945.59. We disagree.
Since Defendant has denied committing the robbery and murder, identity is at issue. See State v. Williams (Nov. 1, 1995), Summit App. No. 16418, unreported, at 28-29, affirmed (1997), 79 Ohio St.3d 1. Evid.R. 404(B) specifically provides that Defendant's prior acts may be used to prove his identity. The Supreme Court of Ohio has determined that such prior acts may be admissible in two types of circumstances. The first includes those situations where the other acts are part of one criminal transaction such that they are inextricably related to the charged crime. State v. Lowe, 69 Ohio St.3d, at 531. In the case sub judice, the theft from ConSun was not part of the immediate background of the robbery and murder.
The second type of situation in which other acts may be introduced to establish the identity of the perpetrator arises if the other acts establish a similar modus operandi. Id. The Ohio Supreme Court stated:
 A certain modus operandi is admissible not because it labels a defendant as a criminal, but because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator. Other-acts evidence is admissible to prove identity through the characteristics of acts rather than through a person's character. To be admissible to prove identity through a certain modus operandi, other-acts evidence must be related to and share common features with the crime in question.
Id.; see, also, State v. Jamison (1990), 49 Ohio St.3d 182, 186-87
(finding seven previous robberies admissible to establish identity because, despite some differences, there were sufficient similarities to demonstrate an identifiable plan of criminal activity). "Therefore, in order to be admissible, other acts evidence must permit the jury to make the following identity inference: this crime and the other act were both committed in X manner, therefore, they were probably committed by the same person." State v. Deyling (Jan. 28, 1998), Medina App. No. 2672-M, unreported, at 4.
The characteristics surrounding the ConSun theft sufficiently resemble those in the present case to constitute other acts evidence permissibly introduced into evidence. The evidence tended to show that as part of his scheme or plan, Defendant would steal cash from an employer when the cash was easily accessible or convenient. The similarity between the instant case and the previous crime is obvious and fits a general pattern, and as such, was admissible. See State v. Perry (1992),80 Ohio App.3d 78, 83.
 C. Testimony of Sergeant James Johnson
The third area of other acts evidence that Defendant assigns as error concerns the testimony of Sergeant James Johnson, a police officer from the Charleston, West Virginia police department, who testified to a prior theft committed by Defendant. Sergeant Johnson stated that on April 25, 1985, Defendant confessed that he had stolen some money while working as a security guard for Pinkerton's. Defendant admitted to Sergeant Johnson that while working at a business for his employer, he saw some money lying out in the open and when no one was around, put it in his pocket. After work that day, Defendant stated to the witness that he went home, changed his clothes, and went to pay some bills. Defendant points out that the two events are remote in time. The previous act of theft occurred thirteen years earlier than the present crime. Defendant further asserts this evidence does not fall under any exception articulated in Evid.R. 404(B) or R.C. 2945.59.
Assuming arguendo the admission of the testimony regarding the 1985 confession to theft was error due to the thirteen year time gap between the acts, we find the error was harmless. Pursuant to Crim.R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Accordingly, "[w]here constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." State v.Williams (1983), 6 Ohio St.3d 281, paragraph six of the syllabus.
The State presented an abundance of evidence against Defendant, and although the evidence was circumstantial, it was compelling, as discussed below in this Court's analysis of Defendant's sixth assignment of error. "Circumstantial evidence and direct evidence inherently possess the same probative value[.]" State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. Even without the testimony of Sergeant Johnson, the remaining evidence constitutes overwhelming proof of Defendant's guilt. Therefore, we hold that the error, if any, was harmless. Defendant's first assignment of error is overruled.
ASSIGNMENT OF ERROR II
 THE TRIAL COURT ERRED IN PROHIBITING THE INTRODUCTION OF TESTIMONY BY A DEFENSE WITNESS, THEREBY VIOLATING [DEFENDANT'S] RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
In his second assignment of error, Defendant argues that the trial court erred by excluding testimony of Tuanna Foltz, assistant manager of Friendly's, to whom the victim spoke after an argument with someone on the restaurant telephone two or three days prior to her murder. Defendant proffered the testimony of Ms. Foltz which related that the victim was using profanity while on the call, and that the victim said it was her boyfriend, Brady Schroeder, with whom she was arguing. Ms. Foltz's testimony would also relate that the victim showed her a numeric message on her pager which the victim explained was sent by Mr. Schroeder, and decoded to read "fuck you, die." Defendant contends that the victim's statements were admissible under the excited utterance or present sense impression exception to the hearsay rule. Further, he maintains that the statements were crucial to presenting his alternate theory that Mr. Schroeder committed the robbery and murder and, therefore, Defendant was denied his right to a fair trial as guaranteed by the United States and Ohio Constitutions. We disagree.
As a general rule, out-of-court statements offered to prove the truth of the matter asserted are hearsay and are not admissible. Evid.R. 801(C) and 802. However, Evid.R. 803 states in pertinent part:
The following are not excluded by the hearsay rule * * * :
 (1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness.
 (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
The difference between these hearsay exceptions is that a present sense impression does not need to be made under the influence of emotion or trauma. Evid.R. 803(1) Staff Note. "Fabrication and faulty recollection are precluded by the fact that present sense impressions are limited to only those statements directly describing or explaining an event made while or immediately after the declarant perceives the event." State v.Lester (Dec. 14, 1994), Summit App. No. 16691, unreported, at 3. Unlike the Federal Rules of Evidence, Evid.R. 803(1) gives the trial court discretion to exclude statements if the circumstances under which the statement was made indicate a lack of trustworthiness. Id.; Evid.R. 803(1) Staff Note. When determining the trustworthiness of a statement, one of the principal elements the trial court should consider is whether the statement was made to a person who would be in a position to verify the statement. Evid.R. 803(1) Staff Note. However, corroboration is not necessarily required. Lester, supra, at 4. Therefore, "with the exception of a startling event or occurrence as the circumstantial guarantee of trustworthiness, the exceptions are substantively quite similar." Skelly Beauty Academy, Inc. v. Columbia Gas of Ohio, Inc. (Aug. 29, 1991), Cuyahoga App. Nos. 58597, 58598, 58599, 58600, unreported, 1991 Ohio App. LEXIS 4235, at *8. Under the excited utterance exception, the trial court is afforded wide discretion in determining whether a declarant was under the stress of excitement caused by a startling event at the time the statement was made. State v. Fowler
(1985), 27 Ohio App.3d 149, 152; see, also, State v. Wallace (1988),37 Ohio St.3d 87, 90
In all cases, evidence must be relevant to be admissible. Evid.R. 402. "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.
The first statement alleged as erroneously excluded was the victim's statement to Ms. Foltz that Mr. Schroeder was the person on the phone with whom she was arguing. While this statement was hearsay, it did not properly qualify as an excited utterance. For a statement to be admissible as an excited utterance, the party seeking admittance has the burden to prove the statement was made while the victim was under the stress of the startling event or condition. State v. Tanner (1993),90 Ohio App.3d 761, 772; see, also, State v. Kerr (Oct. 9, 1998), Lake App. No. 97-L-032, unreported, 1998 Ohio App. LEXIS 4850, at *31-*32. Therefore, it was Defendant's obligation to lay a proper foundation, pursuant to Evid.R. 803(2), at the time the evidence was adduced. SeeState v. Tanner, 90 Ohio App.3d at 772 (stating the party seeking to admit an excited utterance has the obligation to lay a proper foundation); State v. Mowery (Aug. 25, 1981), Franklin App. No. 80AP-604, unreported, 1981 Ohio App. LEXIS 10216, at *13 (finding the foundation must be presented when the evidence is adduced).
In the present case, the record does not reveal that Defendant met his burden of showing the victim made this statement while under the stress of the event, in this case, the argument on the phone. At the time Defendant attempted to introduce the testimony as to the identity of the caller, the facts established that Ms. Foltz previously heard the victim "on the phone screaming very loudly" and that Ms. Foltz "would be testifying that [the victim] was screaming obscenities." Evidence of "a startling event or condition," alone, is not enough to qualify the statement as an excited utterance. Evid.R. 803(2). Defendant must also make the prerequisite showing that the victim made the statements while "under the stress of excitement caused by the event or condition." Id.; accord State v. Tanner, 90 Ohio App.3d at 772. There was no foundation laid at the time this evidence was adduced as to when the victim made the statement and whether she was still under the stress of excitement. Under these circumstances, at the time Defendant attempted to introduce the statement it was inadmissible hearsay.[1] See Mowery, supra. Therefore, the trial court did not abuse its discretion in refusing to admit the statement as an excited utterance based on Evid.R. 803(2).
Furthermore, the statement does not qualify for the present sense impression exception. According to the proffer made by defense counsel, this statement appears to have been made after the victim hung up the phone. However, at the time defense counsel attempted to introduce the testimony, the record is unclear as to the amount of time that elapsed between the call and the statement. Therefore, we cannot properly determine if the victim made the statement immediately after the phone call as required by Evid.R. 803(1). More importantly, based upon the record, Ms. Foltz was not in a position to verify that it was Mr. Schroeder on the phone. Therefore, there is nothing to substantiate the trustworthiness of the victim's statement. See Evid.R. 803(1) Staff Note; see, also, Skelly Beauty Academy, supra, at *10. It is well within the trial court's discretion to exclude statements under this hearsay exception due to lack of trustworthiness. Evid.R. 803(1) Staff Note. Under these circumstances, we cannot say it was an abuse of discretion for the trial court to exclude this statement as inadmissible hearsay.
The second statement excluded, which is at issue, is Ms. Foltz's testimony that she overheard the victim "say `fuck you' in a loud voice" while the victim was talking on the phone to Mr. Schroeder. Defendant asserts that this statement was not hearsay since it was not offered for the truth of the statement. Assuming arguendo this was not hearsay, based on our ruling as to the statement regarding the identity of the caller, the fact that the victim used profanity while on the call is irrelevant and inadmissible. See Evid.R. 401 and 402. Therefore, the trial court did not abuse its discretion in excluding this statement.
The final statement Defendant points to as excluded in error was the victim's statement to Ms. Foltz that Mr. Schroeder had sent her a numeric page that decoded to read "fuck you, die." This statement presents us with a classic example of double hearsay i.e., Ms. Foltz testified as to a message originally sent by Mr. Schroeder, which was then repeated to Ms. Foltz by the victim. Evid.R. 805 provides: "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule * * *." Therefore, even if the statement by the victim to Ms. Foltz qualified as an excited utterance or present sense impression, there is no hearsay exception permitting the admission of Mr. Schroeder's message to the victim. Therefore, Ms. Foltz's testimony would have been double hearsay and the trial court properly excluded the testimony regarding this conversation.
"A party may not predicate error on the exclusion of evidence during the examination in chief unless two conditions are met: (1) the exclusion of such evidence must affect a substantial right of the partyand (2) the substance of the excluded evidence was made known to the court by proffer or was apparent from the context within which questions were asked." (Emphasis sic.) State v. Gilmore (1986), 28 Ohio St.3d 190, syllabus.
Even assuming arguendo that these statements would have been admissible under exceptions to the hearsay rule, we would still find no reversible error in the trial court's decision to exclude them. No substantial right of Defendant was prejudiced as a result of the exclusion of these statements. See id. The purpose of Defendant introducing these statements below was to provide the alternative theory to the jury that Mr. Schroeder may have committed the robbery-murder, rather than Defendant. Defendant contends that he was denied his right to due process and a fair trial because the jury did not hear this alternative theory. The fact of the matter is that Detective Michael Dussel, the lead investigator in the case for the Elyria Police Department, already testified that Mr. Schroeder was originally a suspect for the murder. He proceeded to explain to the jury the specific steps the police department took that ruled out Mr. Schroeder. Detective Dussel gave detailed testimony regarding his verification of Mr. Schroeder's whereabouts during the time of the murder using phone records, as well as confirmation from people that were with him throughout the night in question. Given that this alternative theory had already been raised and addressed, any error by the trial court in excluding the hearsay statements on this point would have been harmless. See Crim.R. 52(A). The second assignment of error is overruled.
ASSIGNMENT OF ERROR IV
 THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT [DEFENDANT'S] MOTION TO SUPPRESS THE STATEMENTS MADE BY [DEFENDANT] WHILE IN THE CUSTODY OF THE ELYRIA POLICE DEPARTMENT IN VIOLATION OF [DEFENDANT'S] FIFTH, SIXTH
AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION.
In Defendant's fourth assignment of error he argues that the trial court should have suppressed the statements made by Defendant to the police while in custody "[f]or all of the reasons set forth in [Defendant's] Motion to Suppress[.]"
Our review of Defendant's fourth assignment of error is burdened by Defendant's noncompliance with the Local Rules of the Ninth District Court of Appeals. Loc.R. 7(D) provides that an appellate brief "shall not exceed thirty (30) pages, * * * exclusive of the table of contents, table of authorities and the appendix." Defendant's brief is exactly thirty pages, as permitted by the rule. However, Defendant attempts to argue this assignment of error by incorporating a brief filed in the court below. We note that Defendant did not move this court for additional pages. "`We reiterate that incorporation by reference cannot be used to circumvent the page limitations set by [Loc.R. 7(D) of the Ninth District Court of Appeals] and will not be countenanced by this court.'" (Alterations in original.) In re Estate of Stewart (June 28, 2000), Lorain App. No. 99CA007422, unreported, at 10, fn. 6, quotingCincinnati Ins. Co. v. Colelli Assoc., Inc. (June 17, 1998), Wayne App. No. 97CA0042, unreported, at 6, fn. 2; accord Durgan v. Ohio Bur. ofEmp. Servs. (1996), 110 Ohio App.3d 545, 552. Therefore, because there were no points actually argued by Defendant in the text of his brief for this assignment of error, we have no argument to address. Accordingly, Defendant's fourth assignment of error is overruled.
ASSIGNMENT OF ERROR V
 [DEFENDANT] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.
Defendant next argues that his attorneys were deficient on four occasions during his trial, depriving him of his right to effective assistance of counsel. Defendant's argument is not well taken.
The United States Supreme Court has set forth a two-part test to determine if a conviction or sentence should be reversed based upon ineffective assistance of counsel. Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed.2d 674, 693. "First, the defendant must show that counsel's performance was deficient." Id. To meet this standard Defendant must be able to prove "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment." Id. Second, Defendant must establish that the deficient performance by counsel was serious enough that it resulted in prejudice to the defendant "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. The Supreme Court of Ohio set out a substantially similar standard in State v. Bradley (1989),42 Ohio St.3d 136, paragraph two of the syllabus, holding that "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." In order to show prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."Id. at paragraph three of the syllabus.
"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"Strickland v. Washington, 466 U.S. at 689, 80 L.Ed.2d at 694. There are numerous ways for counsel to provide effective assistance in any given case. In light of these facts, debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. State v.Clayton (1980), 62 Ohio St.2d 45, 49.
In his first assertion, Defendant has argued that his trial attorneys were ineffective for failing to impeach Mr. Schroeder with a prior criminal conviction. We cannot conclude that Defendant's attorneys were not acting as the counsel guaranteed by the Sixth Amendment simply because they did not impeach Mr. Schroeder. Even if the attorneys' performance could be deemed deficient, their error did not prejudice Defendant. As stated previously, the Elyria Police Department ruled out Mr. Schroeder as a suspect as explained to the jury by Detective Dussel. Additionally, any information provided by Mr. Schroeder concerning the victim's whereabouts was confirmed by her co-workers. Defendant has failed to demonstrate that but for this error, the result of the trial would have been different. Defendant has not shown ineffective assistance of counsel on this issue.
The second alleged instance of ineffective assistance was Defendant's attorneys' failure to object to the testimony of Sergeant Behne regarding Defendant's "partial confession" made while in police custody. Defendant argues that if the motion to suppress the confession should have been granted as raised in the fourth assignment of error, then his attorneys waived the error by their failure to object to the admission of the statements, thus resulting in ineffective counsel.
Crim.R. 12(B), which addresses pretrial motions, provides:
 Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial:
* * *
 (3) Motions to suppress evidence * * * on the ground that it was illegally obtained. * * *
An important characteristic of a motion to suppress is that it determines with finality the admissibility of evidence. State v. French (1995),72 Ohio St.3d 446, 449. Once the trial court denies the motion, there is no need to renew the objection to the admission of the evidence at trial.[2] In this case, assuming arguendo that the motion to suppress Defendant's statements was properly denied, there was no new basis or need to object to the admission of the statements during the trial. Therefore, we hold that this issue is properly appealable because Defendant's attorneys did not need to object to the admission of the statements after the trial court had denied the pre-trial motion to suppress. Accordingly, Defendant's attorneys were not deficient for failing to object to the admission of the partial confession.
The third area of the trial Defendant has challenged deals with Defendant's attorneys' error in opening the door to evidence relating to Defendant's previous theft from his employer, ConSun, as addressed in the first assignment of error. As we pointed out previously, Defendant was not prejudiced by his attorneys' error. See Strickland v. Washington,466 U.S. at 687, 80 L.Ed.2d at 693. The error did not change the result of the trial. See State v. Bradley, 42 Ohio St.3d at paragraph three of the syllabus. Therefore, Defendant has not shown ineffective assistance of counsel on this issue.
In his fourth alleged error Defendant claims that his trial attorneys were ineffective because they elicited and allowed testimony from Sergeant Scott Sargent, one of the arresting officers, regarding the bad check charge which resulted in Defendant's initial arrest. However, the jury already heard evidence from Lisa Smith and Detective Al Lieby that Defendant had been writing bad checks and that Defendant was arrested on a theft warrant. Apparently, Defendant's attorneys were trying to lessen the blow of this evidence by directing attention to the fact that Defendant did not try to resist the arrest or conceal his identity in any way. The strategy did not amount to ineffective assistance of counsel. See State v. Clayton, 62 Ohio St.2d at 49.
In sum, Defendant's trial attorneys did not render ineffective assistance of counsel. Accordingly, the fifth assignment of error is overruled
ASSIGNMENT OF ERROR III
 THE TRIAL COURT ERRED WHEN IT FAILED TO HOLD A HEARING ON [DEFENDANT'S] MOTION FOR NEW COUNSEL THEREBY DENYING [DEFENDANT] HIS RIGHTS UNDER THE FIFTH, SIXTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSITUTION [sic] AND ARTICLE I, § 10 OF THE OHIO CONSITUTION [sic].
In his third assignment of error, Defendant contends that the trial court erred in its failure to make an inquiry and timely findings on his motion for new counsel and thus denied Defendant his constitutional rights. We disagree.
Defendant filed his first pro se motion for new counsel on June 17, 1998. This motion was deemed withdrawn on June 22, 1998, after the court addressed the matter, found counsel was competent, and Defendant agreed he was satisfied with his representation. Defendant filed a second prose motion for new counsel on February 23, 1999, on which the trial court did not rule. It is this motion and lack of ruling that the Defendant raises as error.
When a trial court fails to rule on a motion, the motion will be considered denied. Georgeoff v. O'Brien (1995), 105 Ohio App.3d 373,378; Solon v. Solon Baptist Temple, Inc. (1982), 8 Ohio App.3d 347,351-52. This presumption has been applied to outstanding motions in criminal cases at the time a judgment of conviction is entered. Statev. Mollick (Aug. 23, 2000), Lorain App. No. 99CA007381, unreported, at 3. Thus, we presume that the trial court denied Defendant's pro se
motion for new counsel. Based on our ruling that Defendant received his constitutional right to effective counsel, the trial court did not abuse its discretion in denying Defendant's second pro se motion for new counsel. Therefore, the third assignment of error is overruled.
ASSIGNMENT OF ERROR VI
 THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his sixth assignment of error, Defendant contends that his convictions for aggravated murder, aggravated robbery, and tampering with evidence are against the manifest weight of the evidence. This Court disagrees.
When a defendant asserts that a conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact. State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, at 4.
Defendant was convicted of aggravated robbery in violation of R.C.2911.01(A)(3), which states that "[n]o person, in attempting or committing a theft offense, * * * or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, or attempt to inflict, serious physical harm on another." The evidence presented showed that Defendant was clearly in financial straits. His bills totaled approximately $8,400, which included three months of past due rent. He had recently agreed to purchase a van for $800. He had child and spousal support payments to make and he was writing bad checks. Although Defendant had been earning approximately $385 net per week during the six weeks prior to the murder, he had asked numerous co-workers if he could borrow money from them.
Additionally, the evidence established that Defendant had a gambling problem. There was undisputed testimony that Defendant spent between $90 and $300 per week on lottery tickets. Police found instant lottery tickets totaling $1,471 while searching Defendant's apartment. When Defendant separated from his wife in September 1997, his ex-wife found instant lottery tickets in his car totaling over $1,000. A previous employer testified that Defendant spent large amounts of money on instant lottery tickets. In addition to the lottery tickets, police found cash totaling $2,012 hidden in the baseboard heater of Defendant's apartment. The money was packaged similarly to how money was packaged at Friendly's, including the use of rubber bands and bill wraps. It was also found wrapped up in the type of towel that Defendant used in his work at the restaurant. Defendant told police he had saved this money from his paychecks and a Workman's Compensation claim he had received two months prior. Additionally, Defendant had $364 on his person, and had spent $483.33 in the time from the robbery-murder to his arrest. Therefore, Defendant had in his possession or had spent a total of $2,859.33 after the robbery-murder. Comparatively, a total of $2,815.45 was stolen from Friendly's.
Having reviewed the record, we conclude that Defendant's conviction for aggravated robbery was not against the manifest weight of the evidence. Although Defendant claimed he had saved the approximately $2,000 found in his apartment, the record discloses that Defendant greatly needed money for his many bills, asked numerous friends if he could borrow money, and had been writing bad checks. The jury had ample evidence that Defendant had committed theft to obtain the money in his possession and, in the process, inflicted serious physical harm on another, as discussed below.
Defendant was also convicted of aggravated murder in violation of R.C.2903.01(B), which reads, "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, * * * aggravated robbery[.]" The evidence presented at trial established that on December 24, 1997, Defendant was alone with the victim at Friendly's just prior to her death and was the last person to see her alive. At 12:20 a.m., the victim sent in a work-related report via the restaurant computer. She was murdered between 12:30 a.m. and 12:45 a.m.
The victim died from asphyxia by suffocation, apparently through the use of plastic or cellophane. Some plastic was found in the front seat of the victim's car tied in a knot with the victim's hair in it. The plastic was found to be consistent with the garbage bags used by Friendly's. The police also found turquoise cotton fibers consistent with that of Defendant's work shirt on the sweater worn by the victim at the time of her death. Defendant lived within walking distance of the restaurant and evidence showed he called a friend from home at approximately 1:15 a.m. Therefore, the evidence indicates approximately an hour elapsed from the last time the victim was known to be alive to the time Defendant was confirmed to be at home.
Finally, after being arrested, Defendant told police, "I don't know why I did this," and that he had blacked out and did not know what came over him. In response to questions from the police officer, the police found out that the incident was not sexual in nature and that Defendant did not know where the murder took place. When asked about the possibility that he had panicked, placed the victim in the trunk of her car, and wiped off his fingerprints, he responded, "What do you think?"
Defendant told police that he left the restaurant between midnight and 12:20 a.m., walked home, took a shower, washed his shirt, and mended a tear in his pants. He later altered his story, after being asked about the possibility of his fingerprints being on the victim's car, and stated that after leaving the restaurant he checked the doors on the victim's car to make sure they were locked.
Defendant presented two witnesses. Tuanna Foltz, assistant manager of Friendly's, testified that there were other Friendly's employees that wore turquoise work shirts like that of Defendant. She also testified that the victim's sweater was a "break sweater," kept in the restaurant office for the use of all other employees, indicating the turquoise fibers could have been transferred from another employee's work shirt. Russel Buchman, supervisor of a neighboring Friendly's Restaurant, testified that when he drove by the Friendly's location in question at 12:20 a.m. on December 24, 1997, he noticed the restaurant looked unusual for that time of night. He testified that all the lights were on and he saw two cars in the parking lot, one of which belonged to the victim. He did not know to whom the other unidentified car belonged.
We conclude that Defendant's conviction for aggravated murder is not against the manifest weight of the evidence. There was ample evidence that Defendant purposely caused the victim's death by suffocation and, as discussed above, caused the victim's death while or after committing aggravated robbery. The testimony does not weigh heavily in favor of Defendant, and the jury did not clearly lose its way when it found Defendant guilty of aggravated murder.
R.C. 2921.12(A)(1) addresses tampering with evidence and establishes that
 [n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]
The record discloses the Defendant placed the victim's body in the trunk of her car and drove it across the street, where it was left in a parking lot. The car was wiped clean of fingerprints. Therefore, we find Defendant concealed and destroyed evidence. Accordingly, Defendant's conviction for tampering with evidence is not against the manifest weight of the evidence.
Upon review of all of the evidence presented at trial, the convictions for aggravated murder, aggravated robbery and tampering with evidence are not against the manifest weight of the evidence. Defendant's sixth assignment of error is without merit.
Defendant's six assignments of error are overruled and the judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 _______________________ LYNN C. SLABY
FOR THE COURT, BAIRD, P. J., CARR, J., CONCUR.
[1] Ms. Foltz testified later that the victim was "upset, shaking, [and] very angry" when Ms. Foltz talked to her. Assuming it was during this time that the victim made the statement in question, the trial court did not have the benefit of this required foundational framework at the time of the objection and subsequent ruling.
[2] We note that this is different than preserving for appeal the denial of a motion in limine, which is a tentative, interlocutory order.State v. Grubb (1986), 28 Ohio St.3d 199, 201. In order to preserve the denial of a motion in limine for appeal, the opposing party must proffer the temporarily prohibited evidence to enable the court to make a final determination and to preserve any objection on the record for appeal.Id. at 202.