OPINION
Appellant, Jackie L. Newcomb, appeals a judgment of conviction and sentence entered by the Logan County Court of Common Pleas finding him guilty of murder, in violation of R.C. 2903.02(B), felonious assault, in violation of R.C. 2903.11(A)(1), and gross abuse of a corpse, in violation of R.C. 2927.01. For the reasons expressed in the following opinion, we affirm the judgment of the trial court.
The facts that are relevant to the issues raised on appeal are as follows. Jackie Newcomb and Vickie Grubbs were involved in a three-year relationship beginning in 1998. The relationship was described as volatile and involved multiple incidents of violence between the individuals.
Sometime in the night of June 22-23, 2000, Grubbs was murdered in Newcomb's trailer in DeGraff, Logan County, Ohio. In the early morning hours of June 23, 2000, Newcomb loaded Grubbs' body into his truck, drove to Hardin County, dumped her body in a deep culvert along a road, and cleaned the trailer. On June 26, 2000, Newcomb, one of his friends, and one of his brothers, reported these events to the Logan County Sheriff's Department. Newcomb denied having murdered Grubbs but admitted to disposing of her body.
On July 10, 2000, Newcomb was indicted by a Logan County Grand Jury for the three aforementioned offenses arising out of the death of Vickie Grubbs. Newcomb pled not guilty to all three charges. The case proceeded to a jury trial on March 15, 2001. On March 21, 2001, the jury returned guilty verdicts on all three counts in the indictment.
Newcomb was sentenced on April 25, 2001, to consecutive sentences for each offense: fifteen years to life for murder, eight years for felonious assault, and twelve months for gross abuse of a corpse.
From this conviction and sentencing, this appeal followed, whereby Appellant presents four assignments of error for our consideration.
 Assignment of Error Number One The trial court erred in permitting evidence of prejudicial `other acts,' thereby denying Appellant Newcomb his rights to due process of law and to a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.
 In his first assignment of error, Newcomb sets forth several arguments challenging the trial court's admission of other acts evidence, including testimony of prior acts of violence toward Grubbs and tape recorded phone conversations between Newcomb and Grubbs. We find no merit to these arguments.
Prior to trial Newcomb filed a motion in limine, by which he sought a preliminary ruling on the admissibility, under Evid.R. 404(B), of evidence of threats and incidents of domestic violence alleged to have been perpetrated by Newcomb against Grubbs, including domestic violence reports to local authorities. Following a hearing, the trial court denied the motion, and testimony to these other acts was adduced at trial.
It is well established that evidentiary rulings are within the broad discretion of the trial court and will be the basis for reversal only on an abuse of discretion that amounts to prejudicial error.[1] An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.[2] When applying an abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court.[3]
"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."[4] "In short, harmless evidentiary error is not a ground for reversal and retrial."[5] Non-constitutional error is harmless if there is substantial other evidence to support the guilty verdict.[6] "To be deemed non-prejudicial, error of constitutional dimension must be harmless beyond a reasonable doubt."[7]
Pursuant to R.C. 2945.59, evidence of other acts may be admissible under certain circumstances.
 In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
Similarly, Evid.R. 404(B) provides:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 Evid.R. 404(B) permits evidence of other acts in a criminal proceeding if: (1) substantial proof is adduced to show that the person against whom the evidence is offered committed the other acts; (2) one of the matters enumerated in the rule or the statute is a material issue at trial, and; (3) the evidence tends to prove the material enumerated matter.[8]
Other acts offered as probative evidence of the matter must generally be temporally connected to the alleged crime.[9] Both R.C. 2945.59 and Evid.R. 404(B) contemplate acts which may or may not be similar to the crime at issue.[10]
Newcomb argues, generally, that evidence of the nature of the relationship and prior acts of violence between himself and the victim was irrelevant and inadmissible. However, the State was required to prove, beyond a reasonable doubt, the issues of motive, identity, and intent to commit the subject crimes. The Ohio Supreme Court has indicated that evidence of prior acts of domestic violence is admissible to show motive, intent, and absence of mistake.[11] Other acts evidence may be admissible within the parameters of Evid.R. 404(B) to establish intent, even where intent is not disputed at trial.[12]
The nature of the prior relationship between Newcomb and Grubbs bore directly on whether Newcomb had a motive to kill Grubbs.[13] Evidence indicated that the murder was the final culmination of Newcomb's jealousy, possessiveness, and control. Testimony describing intoxicated conflicts, predicated upon Newcomb's jealousy and violent reactions to Grubbs' alleged relationships with other men, was admissible proof of Newcomb's motive and why he would have a desire to seriously injure or kill Grubbs.[14]
Newcomb further placed his identity as the perpetrator of the charged offenses at issue, when, in argument and through his testimony and the cross-examination of prosecution witnesses at trial, he denied that he was the perpetrator of Grubbs' injuries, denied committing acts upon Grubbs that were capable of inflicting serious physical harm, and sought to establish that his brother was the perpetrator of the crimes. Consequently, evidence of circumstances in which he had previously beaten Grubbs and the severity of the injuries he inflicted were relevant to rebut these contentions and to prove that Newcomb, rather than his brother, had inflicted the fatal injuries upon Grubbs.[15] Therefore, the State properly used other acts evidence to prove Newcomb's motive, intent, and identity as the perpetrator of the crimes.
Newcomb specifically asserts that there is a lack of temporal relation between some of the incidents testified to and the murder. As mentioned previously, this evidence was necessary to address Newcomb's assertions that the level of violence in the relationship never escalated beyond slapping, that he was incapable of inflicting serious physical harm upon Grubbs, and that his brother was the perpetrator of the assault and murder. Moreover, our review of the record reveals that Newcomb failed to object to extensive testimony from several witnesses regarding specific instances of conduct occurring throughout their three year relationship, including prior occasions when the police were called for alleged acts of violence against the victim and other unreported incidents of Newcomb beating and kicking Grubbs. The evidence to which Newcomb did object merely reiterated and provided a factual background for the otherwise unchallenged testimony of other witnesses. Also, a review of the record reveals substantial other evidence supporting the guilty verdict. Therefore, we find that any error in the admission of this evidence to be harmless beyond a reasonable doubt.
Newcomb further contends that the introduction of a tape of recorded phone conversations between himself and Grubbs violated Evid.R. 404(B) and R.C. 2945.59. A review of the record indicates that the trial court did not abuse its discretion in admitting the tape. The act of taping the conversations was admissible as evidence reflecting Grubbs' fear of Newcomb.[16] A witness attested that the tapes were recent, based upon the content of the conversations contained therein. Moreover, the conversations provide further evidence of Newcomb's motive by illustrating and supporting the State's theory that the murder was the final culmination of Newcomb's jealousy, possessiveness, and violent reactions to Grubbs' alleged sexual relations with other men. Accordingly, this evidence did not contravene Evid.R. 404(B) or R.C.2945.59.
Newcomb also claims that the trial court's instruction regarding the admission and application of other acts evidence improperly induced character inferences prohibited by Evid.R. 404(A). Instructions as to the use of other acts evidence were given to the jurors by the court both during the testimony and after the close of the evidence. In each instance, the trial court clearly and properly indicated that the evidence was received only for the limited purpose of proving that the defendant acted knowingly, with a purpose, or with intent, and could not be used to prove his character or that he acted in conformity therewith. Therefore, we find that the trial court did not err in its instructions to the jury regarding the use of other acts evidence.
Accordingly, Newcomb's first assignment of error is overruled.
 Assignment of Error Number Two The trial court erred in permitting prejudicial testimony as to the decedent's state of mind, thereby denying Appellant Newcomb his rights to due process of law and to a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 16
of the Ohio Constitution.
 In his second assignment of error, Newcomb argues that his constitutional rights were violated when the trial court improperly admitted hearsay testimony as to the basis of Grubbs' fear of Newcomb and other acts evidence.
A statement constitutes hearsay if it is an out-of-court statement offered to prove the truth of the matter asserted.[17] Newcomb contends that the taped phone conversations contained inadmissible hearsay, but he does not identify, in either his objections or argument on appeal, which voices on the tape he considers to be hearsay. Regardless, pursuant to Evid.R. 801(D)(2)(a), the recorded statements of Newcomb offered against him are admissions by a party opponent, rather than hearsay, and are generally admissible. Moreover, the general contents of the tape, including Grubbs' statements, are not hearsay because they were not offered to prove the truth of the matters asserted in them, but rather, to prove Newcomb's motive and intent.[18]
Therefore, we find that Newcomb has failed to demonstrate any error or prejudice in the admission of the taped conversations.
Newcomb also asserts that the trial court erred in permitting the admission Grubbs' statements as to the basis of her fear of Newcomb. Ohio Evid.R. 803(3) provides the following hearsay exception, in pertinent part:
 A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.
 In State v. Apanovitch,[19] the Ohio Supreme Court cited United States v. Cohen,[20] which noted that Evid.R. 803(3) permitted witnesses to relate any out-of-court statements made to the effect that the declarant "was scared, anxious, or in any other state reflecting his then existing mental or emotional condition." The court also observed that the state-of-mind exception does not permit witnesses to relate any of the declarant's statements as to why the declarant had a particular state of mind. Therefore, to be included under this exception, the statement must be a contemporaneous declaration reflecting the subjective qualities of the declarant's then-existing feelings or state of mind.[21] Accordingly, for example, the witnesses herein could offer testimony that Grubbs said, "I'm afraid that Newcomb will kill me," but not, "I'm scared because Newcomb threatened me."[22]
"[T]estimony of state-of-mind witnesses, that the victim was fearful and apprehensive [is] not inadmissible hearsay and [is] properly admitted."[23] In the instant case, witnesses testified that Grubbs had told them that "* * * Jackie was going to kill her and she knew he would." And that "[Grubbs] was saying that if she went back with Jackie it would be her demise, that Jackie would kill her for basically being around other people besides Jackie, and she was saying that she was getting tired of fighting." A note written to one of the witnesses stated:
 Vickie's [phone number]. If you see him again, call me [and] wake me up. Please don't give my number to anyone but Deb [and] Linda because its unlisted. Thanks for watching my back.
 Witnesses also testified that Grubbs indicated that a domestic violence report "wouldn't do any good" and that Newcomb "wouldn't let her go." These declarations illustrate the subjective qualities of Grubbs' perception of the relationship and then-existing feelings of fear, apprehension, anxiety, and desperation. Accordingly, we find that these declarations were properly admitted under Evid.R. 803(3) as statements reflecting Grubbs' state of mind.
Newcomb also objected to hearsay testimony of Grubbs' recitation of alleged threats of death and violence against her and other witnesses' testimony as to Grubbs' description of acts of violence and identification of Newcomb as the perpetrator of the injuries associated therewith. The trial court admitted portions of this testimony under the Evid.R. 803(3) state of mind exception. As mentioned previously, these statements are clearly not encompassed within the parameters of the state of mind exception and, thus, the trial court erred in admitting such testimony. Having determined that there were instances of hearsay that the trial court should have excluded, we proceed to determine whether that error was prejudicial or harmless.
Having reviewed and considered the entirety of the record, we do not find that, but for the admission of this testimony, the outcome of the trial would likely have been different. The inadmissible testimony to which Newcomb objected was purely cumulative of, and outweighed by, other identical admissible and unchallenged testimony. A review of the record reveals substantial other evidence supporting the guilty verdict. Therefore, we find the error was harmless beyond a reasonable doubt.
Finally, Newcomb argues that the introduction of improper state of mind evidence under Evid.R. 803(3) contributed to and compounded upon the excessive character evidence identified in his first assignment of error resulting in an abrogation of his rights to a fair trial. We find this argument unpersuasive.
 [A] conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal.[24]
 In order to show that the effect of the errors was cumulative and so prejudicial as to deny him a fair trial, an appellant must show that there is a reasonable probability that without these errors, the outcome of the trial would have been different.[25]
Given the record before us, we find that the identified instances of harmless error, viewed singularly or collectively, did not influence the outcome of Newcomb's trial and, therefore, find no merit to this assignment of error.
Accordingly, Newcomb's second assignment of error is overruled.
 Assignment of Error Number Three The trial court erred by excluding Appellant Newcomb's expert testimony to rebut the State's claim that Newcomb's disposal of Grubb's body was proof of guilt as to the murder and felonious assault charges.
 For his third assignment of error, Newcomb argues that the trial court erred in denying his request to admit expert testimony regarding post-traumatic stress disorder to explain his act of dumping Grubbs' body.
Newcomb sought to introduce the testimony of psychologist, Dr. James P. Reardon, Ph.D., to propose an alternative scientific explanation that the act of disposing of Grubbs' body was not the part of a calculated plan, but rather, a reaction consistent with post-traumatic stress disorder induced by the discovery of a body in an individual's home. Having reviewed Reardon's report and Newcomb's arguments for admission of the testimony, the trial court excluded the evidence, finding that the proffered testimony was within the experience or knowledge of laypersons, that expert testimony was not necessary to dispel a common misconception among laypersons, that a significant portion of the proposed testimony would involve inadmissible comment upon Newcomb's veracity, and that whether or not the act was an indicia of guilt or innocence was for the jury to decide.
"It is well established that rulings concerning the admissibility and scope of expert opinion testimony are within the broad discretion of the trial court and will not be reversed on appeal absent a clear showing of an abuse of discretion resulting in material adverse prejudice."[26]
The trial court's determination of admissibility of expert testimony is guided by the requirements of Evid.R. 702, which addresses the qualifications necessary to accord a witness "expert" status:
 A witness may testify as an expert if all of the following apply:
 A. The witness' testimony relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons.
 B. The witness is qualified as an expert by specialized knowledge, skill, experience, training or education regarding the subject matter of the testimony.
 C. The witness' testimony is based upon reliable scientific, technical or other specialized information.
 The Ohio Supreme Court has held that "matters of common knowledge and experience, subjects which are within the ordinary, common and general knowledge and experience of mankind, need not be established by expert opinion testimony."[27] "There is no bright line to distinguish those issues which are within the comprehension of the jury from those which are not."[28]
The death of a loved one, while traumatic, does not necessarily lead to the conclusion that the incident exceeds the boundaries of the ordinary, common, and general knowledge and experience of mankind or mandate the admission of expert testimony.
According to Newcomb's recollection of the events of June 22-23, 2000, as outlined by Reardon's report and Newcomb's testimony at trial, he did not strike or kick Grubbs on the day of her death and she did not appear bruised or beaten prior to her death. Newcomb indicated that when he discovered Grubbs on the floor of the trailer's bathroom her body revealed no indicia of foul play, that she showed no outward signs of trauma, that she still did not appear to be bruised or beaten, and that he had no idea why she was dead or how it happened. When Newcomb attempted to administer CPR some blood from Grubbs' mouth spattered on his face and after a period of time her head became swollen.
The clinical and research evidence Reardon cited describes acute stress disorder and the peri-traumatic dissociative episodes associated therewith as dissociative conditions characterized by "impairment or alteration of memory, consciousness, and contact with the reality of their circumstances" occurring two days to four weeks after a traumatic exposure; however, Newcomb's immediate reactions to the events of the morning of June 23, 2000, were at issue. Though the report identifies some characteristics exhibited by Newcomb and concludes that he is suffering from these conditions, it fails to explain precisely how the condition would compel or produce the act of dumping Grubbs' body. Moreover, the report and the authority cited therein fail to identify a common misconception regarding the condition or enumerate how the matter was beyond a layperson's knowledge or experience under the given circumstances. Given Newcomb's recitation of events, the content of the psychological examiner's report, and the broad discretion afforded to the trial court, we find that the trial court could have reasonably concluded that this factual scenario and a person's reactions thereto were not so extraordinary as to exceed the ordinary, common, and general knowledge and experience of mankind.
Assessing a witness' veracity is within the province of the trier of fact.[29] An expert may provide testimony that assists the trier of fact in assessing the credibility of a witness, but may not provide opinion testimony regarding the truth of a witness' statements or testimony.[30] Testimony as to whether a defendant is feigning a psychological condition or emotional demeanor is akin to an effort to offer an expert opinion as to Defendant's credibility, should be considered in light of and in conjunction with the remainder of the expert's testimony, and must be excluded to the extent for which it was offered to bolster a defendant's credibility.[31]
Reardon devoted a significant portion of his analysis upon the results of Malingering Probability Scale (MPS) testing administered to Newcomb. The MPS is a standardized psychological testing instrument designed to detect exaggerated symptoms and claims of distress through the consistency of the respondent's responses. Reardon stated that the MPS results "suggest that Mr. Newcomb was responding honestly to the test statements" and that "[t]hese results lend credence to [Newcomb's] report of his psychological state."
In his report, Reardon opined that "it [was] at least as probable that Mr. Newcomb's motive for his actions on the morning of 6-23-00 was a result of acute stress disorder, peri-traumatic episode, and panic as it is that he engaged in a calculated pattern of behavior." However, Reardon further emphasized the MPS results, stating that "[p]erhaps most important in arriving at this opinion is the ability to rule out the likelihood that he is faking, feigning, or malingering a psychological disorder." Newcomb echoed this sentiment, asserting that Reardon's belief that Newcomb honestly responded "was the basis of his opinion." In light of this continued emphasis upon Newcomb's honesty, it was not unreasonable, arbitrary, or unconscionable for the trial court to exclude Reardon's testimony upon the conclusion that his opinion and testimony were so permeated by and predicated upon substantiating Newcomb's truthfulness as to invade the province of the jury. Therefore, we find that the trial court did not abuse its discretion in refusing to permit Reardon to testify.
Accordingly, Newcomb's third assignment of error is overruled.
 Assignment of Error Number Four The trial court erred when it entered separate convictions and imposed consecutive sentences for both felonious assault and murder, in violation of R.C. 2941.25 and Appellant's state and federal constitutional rights to due process and to protection against double jeopardy.
 In his final assignment of error, Newcomb argues that the crimes of felonious assault, pursuant to R.C. 2903.11, and murder, pursuant to R.C. 2903.02(B), are allied offenses of similar import for which separate convictions could not be entered.
R.C. 2941.25 provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 Newcomb contends that his felonious assault conviction should merge with the murder conviction because a murder cannot occur without a felonious assault. However, the crimes of felonious assault and murder are not allied offenses where a defendant's actions can be divided into separate and distinct crimes by evidence that the victim suffered other nonfatal injuries, separated by time, location, or causation, which were unconnected to the trauma that resulted in the victim's death.[32]
In this instant case, the State presented the testimony of forensic pathologist, Dr. Diane Barnett Scala. Scala testified that Grubbs' larynx was fractured in half and the hyoid bone, located in the neck at the base of the tongue, had been broken. Based on these observations Scala opined that Grubbs died as the result of strangulation and that the strangulation would have taken roughly a minute to a minute and a half. However, Grubbs also had a broken neck from which she hemorrhaged internally and several broken ribs, which bruised and permitted blood to enter her lungs. Scala testified that, although severe and potentially fatal, Grubbs could have survived the broken ribs and neck. Moreover, Scala indicated that Grubbs had to have survived these injuries for several minutes to allow for the accumulation of blood and, thus, the injuries preceded the strangulation.
Scala's testimony outlines a distinct and significant temporal separation between the severe nonfatal injuries to other parts of Grubbs' body and the fatal injury. Based upon this temporal separation and the fact that these injuries were unconnected to the trauma that resulted in her death, the broken neck and ribs constitute separate offenses of felonious assault for which Newcomb could face conviction and sentence pursuant to R.C. 2941.25(B). Accordingly, Newcomb's fourth assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
HADLEY and SHAW, JJ., concur.
[1] State v. Graham (1979), 58 Ohio St.2d 350, 352.
[2] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[3] Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
[4] Evid.R. 103.
[5] Evid.R. 103, Staff Note.
[6] State v. Webb (1994), 70 Ohio St.3d 325, 335.
[7] State v. Williams (1983), 6 Ohio St.3d 281, paragraph three of the syllabus.
[8] See State v. Lowe (1994), 69 Ohio St.3d 527, 530; State v.Curry (1975), 43 Ohio St.2d 66, syllabus.
[9] State v. Griffin (2001), 142 Ohio App.3d 65, 72, citing State v.Burson (1974), 38 Ohio St.2d 157; State v. Curry (1975), 43 Ohio St.2d 66,72.
[10] State v. Broom (1988), 40 Ohio St.3d 277, paragraph one of the syllabus, certiorari denied (1989), 490 U.S. 1075.
[11] State v. Nields (2001), 93 Ohio St.3d 6, 22.
[12] State v. Smith (1990), 49 Ohio St.3d 137, 141.
[13] State v. Merchant (Feb. 19, 1997), Lorain App. No. 96CA006334, unreported.
[14] State v. Prade (2000), 139 Ohio App.3d 676, 685.
[15] State v. Tillett (June 24, 1999), Cuyahoga App. No. 74275, unreported, dismissed, appeal not allowed by (1999), 87 Ohio St.3d 1430;State v. Banks (1986), 31 Ohio App.3d 57, 61.
[16] State v. Sage (1987), 31 Ohio St.3d 173, 183.
[17] Evid.R. 801(C).
[18] See State v. Kinley (1995), 72 Ohio St.3d 491, 498; Evid.R. 801(C).
[19] State v. Apanovitch (1987), 33 Ohio St.3d 19, 21.
[20] United States v. Cohen (C.A. 5, 1980), 631 F.2d 1223.
[21] Apanovitch, 33 Ohio St.3d at 21-22, citing Shepard v. U.S. (1933), 290 U.S. 96.
[22] Apanovitch, 33 Ohio St.3d at 21.
[23] Id. at 22.
[24] State v. Garner (1995), 74 Ohio St.3d 49, 64.
[25] State v. Moreland (1990), 50 Ohio St.3d 58, 69.
[26] Pacific Great Lakes Corp. v. Bessemer Lake Erie R.R. (1998),130 Ohio App.3d 477, 501, dismissed, appeal not allowed by (1999),85 Ohio St.3d 1427.
[27] Ramage v. Central Ohio Emergency Serv., Inc. (1992),64 Ohio St.3d 97, 103.
[28] State v. Martens (1993), 90 Ohio App.3d 338, 346.
[29] State v. Jones (1996), 114 Ohio App.3d 306, 318.
[30] State v. Stowers (1998), 81 Ohio St.3d 260, 262; State v.Moreland (1990), 50 Ohio St.3d 58, 62, certiorari denied (1990),498 U.S. 882.
[31] Martens, 90 Ohio App.3d at 347; see, also Moreland,50 Ohio St.3d at 62.
[32] State v. Smathers (Dec. 20., 2000), Summit App. No. 19945, unreported, dismissed, appeal not allowed by (2001), 91 Ohio St.3d 1509,State v. Edwards (July 28, 1999), Lorain App. No. 97CA006775, unreported.